979 F.2d 444
 61 USLW 2332, 123 Lab.Cas. P 10,444,
15 Employee Benefits Cas. 2833
 Kenneth D. STEVENS, Deceased; Bettie J. Stevens,
Beneficiary and Surviving Spouse,
Plaintiff-Appellee (90-3898),
Cross-Appellant (90-3899),
Cross-Appellee (90-3900),
v.
EMPLOYER-TEAMSTERS JOINT COUNCIL NO. 84 PENSION FUND,
Defendant-Appellant (90-3898), Cross-Appellee (90-3899),
Central States, Southeast and Southwest Areas Pension Fund,
Defendant-Cross Appellant (90-3900),
Cross-Appellee (90-3899),
Womeldorf, Inc., Defendant.
 Nos. 90-3898, 90-3899 and 90-3900.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 14, 1992.
Decided Nov. 16, 1992.
 
 Konrad Kuczak (argued & briefed), Dayton, Ohio, for Kenneth D. Stevens.
 Joan P. Simmons (briefed), James P. Condon (argued), Central States, Southeast & Southwest Areas Health & Welfare & Pension Funds, Rosemont, Ill., Louis F. Solimine, Thompson, Hine & Flory, Cincinnati, Ohio, for Central States, Southeast & Southwest Areas Pension Fund.
 John R. Doll (argued & briefed), Logothetis & Pence, Dayton, Ohio, for Employer-Teamsters Joint Council No. 84 Pension Fund.
 Before: MILBURN and RYAN, Circuit Judges; and ZATKOFF, District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Defendants Employer-Teamsters Joint Council No. 84 Pension Fund and Central States, Southeast and Southwest Areas Pension Fund appeal from the district court's judgment for Kenneth D. Stevens. Stevens sought a partial pension from Joint Council No. 84 and Central States. After a bench trial, the district court held in favor of Stevens, awarding him a partial pension. Subsequent to entry of the judgment, Stevens died and his widow, Bettie J. Stevens, prosecutes this appeal. Despite winning the judgment below, Bettie Stevens cross-appeals from an earlier order of the district court which held that jurisdiction did not lie under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132.
 
 I.
 BACKGROUND
 
 2
 Joint Council No. 84 is a trust fund with the responsibility of administering an employee benefit plan established pursuant to a collective bargaining agreement between employers and the Teamsters. Joint Council No. 84 was established by a trust agreement that provided, in relevant part:
 
 
 3
 The contributions shall be made in the amount and at regular intervals required by the collective bargaining agreements between the Union and the Employer, and shall be paid to the Trustees in accordance with the rules and regulations of the Trustees.
 
 
 4
 ....
 
 
 5
 The Trustees shall ... Accept and receive all contributions and shall hold, invest, reinvest, manage and administer the same as part of the Pension Fund....
 
 
 6
 Pursuant to the authority granted them under the trust agreement, the trustees established the Employer-Teamsters Joint Council No. 84 Pension Plan. The plan provided, in relevant part:
 
 
 7
 Each Employer shall pay to the Trustees for deposit in the Trust fund, pursuant to the provisions of the Trust Agreement, the amount per month or the amount per hour with respect to each of its employees and under such conditions as called for in the Pension Agreement between the Union and said Employer.
 
 
 8
 Central States is also a pension fund charged with the responsibility of administering an employee benefit plan established pursuant to collective bargaining agreements. Central States' plan provides for payment of partial pension benefits to participants whose years of employment were divided among employers maintaining separate plans. Central States will pay a partial pension if the other plan has a reciprocal agreement with Central States and if the employee's service credit with Central States is insufficient to create eligibility for a Central States pension.
 
 
 9
 Central States and Joint Council No. 84 executed a reciprocal agreement. Therefore, service under one plan may be joined with service under the other plan. Central States treats Joint Council No. 84 as a related plan and credits service to Joint Council No. 84 for the purpose of determining whether an employee is eligible for a partial pension. Partial pension eligibility requires at least 15 years of credited service.
 
 
 10
 Kenneth Stevens was a truck driver. In 1958, Stevens began employment as an owner-operator with Beatty Motor Express and joined the Teamsters Union. As an owner-operator, Stevens owned his tractor and used it to haul trailers under the control of his employer, receiving approximately 60-70% of the gross freight hauling charge in lieu of a salary. Although owner-operators were not company drivers, they were covered by collective bargaining agreements requiring pension contributions to the union pension funds. During a portion of his time with Beatty, Stevens was apparently the sole owner-operator at Beatty.
 
 
 11
 A summary of Stevens' work and pension contribution history follows:
 
 
 12
 --February 1958 to April 1961: Stevens worked for Beatty, and Beatty paid pension contributions for Stevens to Joint Council No. 84.
 
 
 13
 --May 1961 to April 1966: Stevens worked for Beatty but Beatty did not pay any contributions to Joint Council No. 84.
 
 
 14
 --May 1966 to 1969: Stevens worked for Beatty, and Beatty paid pension contributions to Joint Council No. 84.
 
 
 15
 --1969 to 1975: Womeldorf, Inc. acquired Beatty. Stevens continued to work for Womeldorf, and Womeldorf paid contributions to Joint Council No. 84.
 
 
 16
 --1975 to 1978: Stevens transferred to Zanesville, Ohio, and joined Teamsters Local No. 637. Womeldorf paid contributions for Stevens to Central States.
 
 
 17
 --1979: Beatty transferred to Pittsburgh, Pennsylvania, and joined Local No. 249. Contributions to Central States ceased.
 
 
 18
 Insofar as it relates to Stevens' claim for a pension, the crucial period in his work history was from May 1961 to April 1966. During that period, although Stevens was still employed by Beatty, the employer made no contributions to Joint Council No. 84; and neither Beatty nor the union informed Stevens of this fact.
 
 
 19
 The parties do not dispute that pension contributions were made on Stevens' behalf to Joint Council No. 84 from 1958-61 and from 1966-75 and to Central States from 1975-78. The parties also do not dispute that Stevens had credited service from 1966-78. However, the parties strongly disagree whether the period 1961-66 is a break in service. If it is, then the 1958-61 period does not count as credited service. If there is no break in service, Stevens' period of credited service under the jurisdiction of Joint Council No. 84 runs from 1958-75.
 
 
 20
 At trial, both sides submitted records covering the period in question. A Report and Remittance form of Joint Council No. 84, dated March 1961, recording pension contributions from Beatty employees listed Stevens and indicated that the fund received a contribution on his behalf. On the April form, Stevens' name is crossed off the list, and his name does not appear on the May form at all. Despite this apparent change in Stevens' status, the form did not provide any explanatory remarks, although for every other employee's change in status during the period 1961-66, the form contained a code explaining the reason.[1] Stevens' name did not reappear on the form until April 1966, when it noted that he had an "Employment Date" of April 1, 1966. The record also contains ledger cards from Joint Council No. 84 indicating that Stevens' accumulated service credit as pension contributions were made on his behalf when he began working for Beatty as a Teamster in February 1958. The cards also indicated that he stopped working in April 1961 but restarted in May 1966.
 
 
 21
 Social Security Administration (SSA) records and Stevens' trial testimony presented a different picture. An SSA earnings report establishes that from 1958 through the first quarter of 1969, Stevens received wages from Beatty, and thereafter received wages from Womeldorf. Stevens testified at trial that during the period 1961-1966, he was not aware of any change in his status, either when the contributions stopped in 1961 or when they resumed in 1966. He testified that he "worked steady all that time" and that the first time he became aware that contributions had not been made during that period was when he applied for his pension. When asked if he had cut a side deal with Beatty regarding pension contributions, Stevens replied: "I didn't make any deal with anyone. All I did was paid [sic] my union dues and worked."
 
 
 22
 In December 1980, at age 56, Stevens applied to Central States for benefits. In January 1981, Stevens also applied to Joint Council No. 84 for benefits. Central States denied Stevens' application in June 1981, noting that he only had 12.5 years of credited service: 4 years with Central States from 1975-1978, and 8.5 years with Joint Council No. 84 from 1966-1974.
 
 
 23
 Joint Council No. 84 reviewed Stevens' application later and considered 1) Stevens' pension history with Joint Council No. 84, and 2) Stevens' subsequent pension history with Central States. In reviewing its own data on Stevens' service history, Joint Council No. 84 determined that the 1961-66 period was a break in service. Therefore, Joint Council No. 84 did not count 1961-66; furthermore, it did not count 1958-61. It concluded that Stevens did not have the necessary 15 years to qualify for a partial pension.
 
 
 24
 Joint Council No. 84 forwarded its determinations to Central States, including a breakdown of Stevens' credited service with Joint Council No. 84. This breakdown noted that Stevens did not receive any credited service in 1961-66, and stated that Joint Council No. 84 would not grant Stevens any additional credited service. Stevens appealed Joint Council No. 84's determination, and in 1988 the trustees of Joint Council No. 84 denied his appeal.
 
 
 25
 Stevens did not formally appeal Central States' determination. In 1988, Central States explained its decision denying Stevens' application. It noted: "We cannot grant service credit for [the years 1961 to 1966] because Mr. Stevens' [sic] was working within the jurisdiction of Joint Council No. 84 Fund. Service credit earned must be determined by that Fund."
 
 
 26
 In October 1988, Stevens filed a complaint against Joint Council No. 84 and Central States, claiming jurisdiction under ERISA, 29 U.S.C. § 1132, and section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a). The complaint claimed that both funds owed him pension benefits.
 
 
 27
 In April 1989, the district court dismissed Stevens' ERISA claim, but permitted him to file an amended complaint to correct deficiencies in the LMRA claim. Stevens v. Employer-Teamsters Joint Council No. 84 Pension Fund, 711 F.Supp. 384, 387 (S.D.Ohio 1989).
 
 
 28
 After Stevens filed a second amended complaint, Joint Council No. 84 and Central States moved separately to dismiss the LMRA claim, but the district court denied both motions. Central States later moved to dismiss on the basis of improper venue, and Joint Council No. 84 moved for a change of venue. The district court denied both motions. After a one-day bench trial, the district court found that it possessed jurisdiction under section 301 of the LMRA, 29 U.S.C. § 185(a); that Stevens was entitled to a pension; and that defendants should issue the pension, retroactive to the date of Stevens' application.
 
 
 29
 Defendants timely appeal from numerous orders and the judgment of the district court, and Stevens cross-appeals from the district court's order granting the motion to dismiss the ERISA claim. In April 1991, Kenneth Stevens died and, as we have said, his widow, Bettie Stevens, prosecutes this appeal.
 
 
 30
 On appeal, the parties advance numerous issues. Because we ultimately reverse and remand, we do not reach many of the issues raised. We will, however, address two jurisdictional issues:
 
 
 31
 1. Whether the district court possessed jurisdiction over plaintiff's claim under ERISA, 29 U.S.C. §§ 1132, 1144(b); and
 
 
 32
 2. Whether the district court possessed jurisdiction over the plaintiff's claim based on section 301 of the LMRA, 29 U.S.C. § 185.
 
 
 33
 In addition, we address three substantive issues:
 
 
 34
 1. Whether the district court erred when it reviewed the pension trustees' decision under a preponderance of the evidence standard;
 
 
 35
 2. Whether venue was proper in the Southern District of Ohio; and
 
 
 36
 3. Whether the district court erred by not requiring Stevens to exhaust his administrative remedies against Central States.
 
 
 37
 For the reasons stated hereafter, we shall affirm the district court's holdings that jurisdiction did not lie under ERISA but did lie under the LMRA; affirm the district court's holdings that venue was proper in the district court and that Stevens exhausted his administrative remedies; but reverse and remand for reconsideration of the case by the district court under the proper standard of review.
 
 II.
 JURISDICTIONAL ISSUES
 A.
 Jurisdiction under ERISA
 
 38
 In her cross-appeal, plaintiff asserts that the district court had subject matter jurisdiction under ERISA because the cause of action arose when the funds finally denied Stevens' applications in 1988, several years after the effective date of ERISA.
 
 
 39
 The district court dismissed Stevens' ERISA claim for failure to state a claim under Fed.R.Civ.P. 12(b)(6). Stevens, 711 F.Supp. at 386. We review this decision de novo. All factual allegations in the plaintiff's amended complaint are deemed admitted, and when an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. Sinay v. Lamson & Sessions Co., 948 F.2d 1037, 1039-40 (6th Cir.1991). We deem such facts admitted even in cases where jurisdiction is at issue and the facts are in dispute. "Jurisdiction ... is not defeated ... by the possibility that the averments might fail to state a cause of action on which [appellants] could actually recover." Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946).
 
 
 40
 Two sections of ERISA inform this court's understanding of the scope of ERISA jurisdiction. The first section establishes the fact of federal court jurisdiction over ERISA actions brought by participants in pension plans. It provides, in relevant part:
 
 
 41
 (a) Persons empowered to bring a civil action
 
 
 42
 A civil action may be brought(1) by a participant or beneficiary--
 
 
 43
 ....
 
 
 44
 (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan....
 
 
 45
 ....
 
 
 46
 (e) Jurisdiction
 
 
 47
 (1) ... State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.
 
 
 48
 29 U.S.C. § 1132. This section gives plan participants the right to bring suit against plans and establishes federal court jurisdiction over ERISA actions; however, it does not speak to the scope of ERISA jurisdiction. Section 1132 does not state when it becomes effective, nor does it describe the disputes to which ERISA applies.
 
 
 49
 We find guidance in another section of the statute, however, concerning the scope of ERISA jurisdiction: the section addressing ERISA preemption. This provision mandates that with two notable exceptions, ERISA, and not state law, governs actions brought by plan participants. It provides, in relevant part:
 
 
 50
 (a) Supersedure; effective date
 
 
 51
 Except as provided in subsection (b) of this section, the provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.
 
 
 52
 (b) Construction and application
 
 
 53
 (1) This section shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975.
 
 
 54
 29 U.S.C. § 1144.
 
 
 55
 Consequently, section 1144 contains two provisions establishing the scope of preemption. First, it mandates an effective date of January 1, 1975. Second, it precludes ERISA preemption from applying to "any cause of action which arose, or any act or omission which occurred, before January 1, 1975." Although the statute does not say so explicitly, we conclude logically, we think, that the language of section 1144, establishing the scope of ERISA preemption, also establishes the scope of ERISA jurisdiction.
 
 
 56
 If a case is not governed by ERISA's preemption provision, then it makes no sense to grant federal courts jurisdiction to apply preexisting state law. Other courts have relied on this rationale in determining the scope of ERISA jurisdiction. As noted by the Fifth Circuit in Woodfork v. Marine Cooks & Steward Union, 642 F.2d 966, 971 (5th Cir.1981): "A state claim not preempted by ERISA obviously does not arise under federal law and the federal forum is thus, absent diversity, closed to it." Courts have also held that a common legislative intent underlies sections 1132 and 1144. As noted by the Ninth Circuit in Menhorn v. Firestone Tire & Rubber Co., 738 F.2d 1496, 1503 (9th Cir.1984): "Although § 1144 speaks only in terms of preemption, we think the conclusion inevitable that it also indicates legislative intent regarding the scope of the jurisdiction conferred under § 1132(e)." The district court accepted this understanding of ERISA jurisdiction, and when it considered whether Stevens presented a claim under ERISA, it relied on the language of the preemption provision. We agree, and find that the scope of ERISA jurisdiction is coterminous with the scope of ERISA preemption.
 
 
 57
 Determining the applicable statutory language is, however, only the first of two steps in determining whether Stevens has stated a claim under ERISA. The second step is to interpret that language. We note initially, that no decision of this circuit has interpreted the language of the ERISA preemption provision. Nevertheless, circuits that have interpreted this section have uniformly agreed that the two clauses of section 1144(b)(1) should be read disjunctively. This creates a two-prong test: "The application of ERISA thus depends upon: 1) a determination of the time the cause of action arose, and 2) a determination of the time of acts or omissions." Rodriguez v. MEBA Pension Trust, 872 F.2d 69, 71 (4th Cir.), cert. denied, 493 U.S. 872, 110 S.Ct. 202, 107 L.Ed.2d 155 (1989) (citing cases). Therefore, under section 1144(b)(1), if either "the cause of action arose" or relevant "acts or omissions" on which a pension fund based a post-1975 benefits decision occurred before January 1, 1975, then ERISA does not apply. The district court employed this two-prong test when it decided that it lacked jurisdiction over Stevens' ERISA claim.
 
 
 58
 In this case, analysis of the first prong is not difficult. An ERISA cause of action for benefits under ERISA does not arise until a claim for benefits has been made and formally denied. Other circuits have uniformly accepted this position. See Rodriguez, 872 F.2d at 72 (citing cases from four other circuits). The district court held that "Stevens' cause of action accrued at the time Joint Council 84 formally and finally denied him benefits in 1988." Stevens, 711 F.Supp. at 387. We agree with the district court and hold that Stevens' cause of action did not accrue until 1988.
 
 
 59
 Analysis of the second prong, however, is more difficult, and is the key to the jurisdiction issue. Under the second prong, courts must determine what conduct amounts to "any act or omission" so that ERISA does not apply to disputes related to that conduct. This question is particularly difficult when, as in this case, the plaintiff's application for benefits was denied post-ERISA, but relevant acts occurred pre-ERISA. Congress has given courts little guidance as to what the phrase "any act or omission" refers, and the result is the development among the circuits of two competing views on this issue.
 
 
 60
 One view interprets the act or omission clause narrowly and treats the trustees' post-ERISA denial of a pension as the act or omission that is subject to ERISA and disregards pre-ERISA events. This has the effect of expanding ERISA preemption. The Third, Fourth, and Fifth Circuits have adopted this position. See Tanzillo v. Local 617, Int'l Bhd. of Teamsters, 769 F.2d 140, 144 (3d Cir.1985); see also Rodriguez, supra; Woodfork, supra. Under this view, if the denial of benefits occurs after January 1, 1975, ERISA applies because the denial is both an "act or omission" and the accrual of the plaintiff's cause of action. The leading and most recent decision adopting this view was the Fourth Circuit in Rodriguez, which reasoned: "While a claim determination may require the plan's trustees to consider pre-ERISA acts, the act of denying a pension post-ERISA will invariably involve a 'contemporaneous construction of the plan's provisions ... to which ERISA's fiduciary standards apply.' " 872 F.2d at 72 (quoting Tanzillo, 769 F.2d at 144). Rodriguez adopted this position for three reasons, all essentially legislative policy arguments. First, it fosters Congress' intent to extend ERISA protection. 872 F.2d at 72 (citing Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45-46, 107 S.Ct. 1549, 1551-52, 95 L.Ed.2d 39 (1987)). Second, it has the advantage of certainty. "Courts need only look to the date of the trustees' determination to decide whether ERISA applies." 872 F.2d at 72. Third, it is more equitable to the plan participants, who "cannot be expected to inquire about benefits until retirement." Id.
 
 
 61
 The other view interprets the act or omission clause broadly by examining the pre-ERISA events which often govern the trustees' decision. This has the effect of limiting ERISA preemption. Under this view, if the trustees' denial is based on events that occurred and plan provisions adopted before 1975, then the denial is not reviewable. The First, Second, and Ninth Circuits adopt this view. See Menhorn, supra; see also Lamontagne v. United Wire, Metal & Mach. Pension Fund, 869 F.2d 153, 157 (2d Cir.), cert. denied, 493 U.S. 818, 110 S.Ct. 72, 107 L.Ed.2d 39 (1989); Quinn v. Country Club Soda Co., 639 F.2d 838, 841 (1st Cir.1981).
 
 
 62
 The Ninth Circuit's Menhorn holding is the leading decision limiting ERISA preemption. The court held that "in cases where a claimant is formally denied benefits after ERISA's effective date pursuant to an unambiguous and nondiscretionary plan provision adopted before the effective date, the denial is not reviewable under ERISA." 738 F.2d at 1501. Thus, the second view limits ERISA preemption, and consequently, ERISA jurisdiction.
 
 
 63
 In summary, the circuits are evenly divided. One group of decisions holds that ERISA applies as long as the plaintiff shows that the denial of benefits occurred after the effective date of ERISA; the other holds that ERISA does not apply if the denial of benefits is based on an act or omission that occurred before the effective date of ERISA. The district court relied on the second group of authorities when it decided that ERISA did not apply to Stevens' suit. It held: "Stevens was formally denied benefits after ERISA's effective date pursuant to a plan provision (break in service and the years of credited service requirement) adopted before the effective date. Therefore, the denial of those benefits is not reviewable under ERISA." Stevens, 711 F.Supp. at 387.
 
 
 64
 After carefully considering the opposing positions, we hold that if the operative events on which a pension plan bases a benefit decision occurred before January 1, 1975, there is no ERISA preemption and, consequently, no ERISA jurisdiction. ERISA jurisdiction will not lie in cases where a pension plan denies the applicant's claim after January 1, 1975, but the plan administrators exercised no discretion in so denying because the ultimate benefit decision was completely dictated by the pre-1975 events. We reach that conclusion for a number of reasons.
 
 
 65
 The relevant statutory language provides that ERISA preemption does "not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975." 29 U.S.C. § 1144(b)(1) (emphasis added). The word "or" demonstrates that the drafters intended the clauses to be read disjunctively. When courts interpret a statutory provision, they should give phrases joined by a disjunctive separate meanings. Reiter v. Sonotone Corp., 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979). ERISA preemption thus does not obtain in either of two different circumstances--when the cause of action arose before 1975, or when any act or omission occurred before 1975. Viewing a pension plan's denial of benefits not only as the trigger of the cause of action but also as the critical "act or omission" subject to ERISA renders the "act or omission" language superfluous. The interpretation we adopt gives the "act or omission" clause the separate and distinct meaning from the "cause of action" clause that the language suggests.
 
 
 66
 Our interpretation also gives meaning to the language that the preemption provision does not apply to "any act or omission which occurred" before 1975. In interpreting a statute, we must strive to give effect to all of its language. Id. "[A]ny act or omission" does not mean the most recent relevant act or omission; rather, it means any event that occurred before 1975 on which a pension fund bases a post-1975 decision. By disregarding pre-1975 events and focusing solely on the benefit denial, courts have unfortunately read the term "any" out of section 1144(b)(1) and ignored the clear directive of the provision.
 
 
 67
 Further, the construction of section 1144(b)(1) adopted by the Third, Fourth, and Fifth Circuits robs the entire effective date provision of any practical meaning. Under their interpretation, ERISA becomes retroactive to the date on which a litigant enrolled in his pension plan. Thus, the time of the claim denial would always determine the choice of law and jurisdiction. We do not believe Congress intended this result.
 
 
 68
 Rather, we believe that our holding accords with the clear congressional intent that ERISA not be retroactively applied. Courts should not give a statute retroactive effect unless the language of the statute requires that result. Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988). In this case, the preemption provision, by its terms, became effective on January 1, 1975. The only discernible purpose behind the act or omission clause is to prevent pension plans from being held accountable for pre-1975 conduct under ERISA standards. As the First Circuit noted in Quinn:
 
 
 69
 The clear practical import of the act or omission clause is to prevent past conduct of pension plan fiduciaries and contributors from being judged retroactively under the standards established by ERISA simply because the conduct generates consequences subsequent to the ERISA effective date that give rise to what is, technically, an independent "cause of action."
 
 
 70
 639 F.2d at 841. Under the construction adopted by the Rodriguez line of cases, the pre-1975 conduct of a plan's trustees would be judged by ERISA standards so long as the participant applied for and was refused benefits after 1975. Lacking a clear statement from Congress that such a result was contemplated under ERISA, we decline to adopt this interpretation.
 
 
 71
 We also find guidance in the Supreme Court's holding in Malone v. White Motor Corp., 435 U.S. 497, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978). While the Court was not directly interpreting the meaning of section 1144 in Malone, the opinion suggests that the Court views the ERISA statute as applying only to events occurring after January 1, 1975.
 
 
 72
 ERISA ... provides for comprehensive federal regulation of employee pension plans, and contains a provision expressly pre-empting all state laws regulating covered plans.... Because ERISA did not become effective until January 1, 1975, and expressly disclaims any effect with regard to events before that date, it does not apply to the facts of this case.
 
 
 73
 Malone, 435 U.S. at 499 n. 1, 98 S.Ct. at 1187 n. 1 (emphasis added).[2] The Court thus seems to be reading the preemption provision expansively.
 
 
 74
 Finally, our approach respects the interests of both plan participants and plan trustees. By adopting the position that a claimant's cause of action accrues when a plan denies benefits, we ensure that plan participants--potential plaintiffs--will receive fair notice and will not lose benefits through a running of the statute of limitations. By holding that ERISA does not apply to denials of benefits based on pre-1975 events, we protect plan fiduciaries--potential defendants--from "retroactive application of remedial principles not in effect at the time of the conduct in question." Menhorn, 738 F.2d at 1500 n. 3. As one commentator concluded, the position we adopt "ensures that the law applied to a case is that which a trustee could have relied upon when he acted, and not standards that he could not have reasonably anticipated." Note, The Effect of Choice of Law on Federal Jurisdiction under ERISA: Defining the Scope of the Act or Omission Preemption Exception, 58 Ford.L.Rev. 997, 1007 (1990).
 
 
 75
 In holding that ERISA jurisdiction does not lie if a pension plan's denial of benefits was based on pre-1975 acts or omissions, we note that there may be cases in which the denial involved a significant act of discretion on the part of the plan trustees. As noted by Menhorn:
 
 
 76
 Cases such as the one at bar must be distinguished from those in which benefits have been denied as the result of a significant act of discretion under or interpretation of the plan which took place after ERISA's effective date. A plan provision requiring discretion or interpretation does not work to deny an individual benefits until specifically applied to him. A denial of benefits pursuant to such a provision thus operates simultaneously as both the event triggering accrual of a cause of action and the substantial act resulting in denial of benefits....
 
 
 77
 Id. at 1502-03 (emphasis in original). The Second Circuit, in Lamontagne, reiterated this point when it found that ERISA did not apply because the plan trustees did not exercise any discretion: "[N]o discretion was involved in the trustees' 1978 decision to consider [plaintiff's] absence from covered employment as a break in employment, and not as a grace period." 869 F.2d at 157.
 
 
 78
 We think the reliance by Rodriguez on the Supreme Court's holding in Pilot Life, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 is misplaced. In Pilot Life, the Court held that "the express pre-emption provisions of ERISA are deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.' " 481 U.S. at 45-46, 107 S.Ct. at 1551-52 (quoting Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981)). In so holding, however, the Court focused on the topical breadth of preemption, that is, the types of state law claims that "relate to any employee benefit plan," 29 U.S.C. § 1144(a), and are thus preempted by ERISA. The Court did not focus on the temporal breadth of preemption, which is the question at issue in the plaintiff's cross-appeal. More instructive on the temporal aspect is the Court's holding in Malone, where it stated that ERISA disclaims any effect with regard to events before 1975. 435 U.S. at 499 n. 1, 98 S.Ct. at 1187 n. 1.
 
 
 79
 Thus, we conclude that a plan's denial of an application for benefits does not, in and of itself, constitute an act or omission that triggers a claim under ERISA. Rather, we construe "any act or omission" as applying to those acts or omissions on which the plan trustees base their denial of benefits. We believe this conclusion is most faithful to the language of the statutes because it assigns to the words used, their most natural, primary, and generally understood meaning, follows guidance from the Supreme Court, reflects the intent of Congress, and strikes a fair balance between the interests of benefit claimants and their fellow plan participants for whom the trustees are fiduciaries. In so holding, we accept, in large part, the position of the First, Second, and Ninth Circuits.
 
 
 80
 We do, however, disagree with an aspect of two of the decisions from those circuits. The First and Ninth Circuits have seemingly carved out an exception to their holdings that ERISA jurisdiction does not obtain if pre-ERISA acts or omissions trigger the ultimate benefits decisive. This exception applies when a plan participant lacked notice of the act or omission that was jeopardizing his pension plan participation. Menhorn noted that the lack of notice to the plan participant influenced its decision:
 
 
 81
 Although [plaintiff's] cause of action did not accrue until 1980, clearly the substantial acts giving rise to it occurred at the latest in 1967, when he was told that his resignation would terminate his service credits and would preclude him from receiving benefits based on his prior service....
 
 
 82
 738 F.2d at 1502 (emphasis added). The First Circuit, in Quinn, concluded that ERISA did not apply to a post-1975 denial of benefits. In so doing, however, the court noted the denial was based on facts known to the plaintiff: "[T]he pre-1975 events constituted a fully communicated decision, made at the time the Plan was first instituted, and thereafter consistently adhered to, that plaintiff was not among those covered by the Plan." 639 F.2d at 841 n. 2. To the extent that these decisions can be read as support for the proposition that a plaintiff's lack of notice about pre-1975 relevant acts or omissions overcomes the jurisdictional obstacle, we disagree. Lack of notice is not related to jurisdiction as a general matter, but is considered by courts when making an equitable determination whether to permit a plaintiff to proceed whose otherwise legitimate claim is barred by a statute of limitations. We fear that Menhorn and Quinn obscure, at least to some degree, a clear reading of section 1144 by introducing a judicial gloss implicating notice, reliance, and other equitable considerations. Such considerations have no place in the determination of whether a federal court has the subject matter jurisdiction to consider a claim under ERISA.
 
 
 83
 As a final observation, we note that in the case where a pension plan participant seeks to sue the plan and jurisdiction does not lie under ERISA, the participant is not left bereft of all remedies. The participant has available state law claims, which may include claims alleging fraud or violations of fiduciary duty or claims based on then-existing state pension laws.
 
 
 84
 We turn then to the task of applying this holding to this case. The district court held that the act or omission which gave rise to the plaintiff's claim was Joint Council No. 84's adoption of the break in service provision. Stevens, 711 F.Supp. at 387. Although we agree with the district court's ultimate holding on the ERISA jurisdiction issue, we disagree with its determination of what constituted the relevant acts or omissions. We find that the relevant acts or omissions are those that relate specifically to Stevens and form the basis of Joint Council No. 84's decision to deny him service credit for the 1958-66 period.
 
 
 85
 In this case, the relevant acts or omissions were Beatty's failure to make pension contributions on Stevens' behalf, as was required by the collective bargaining agreement;[3] Joint Council No. 84's failure to collect pension contributions, as was required by the pension trust agreement; and Joint Council No. 84's failure to inform Stevens that his pension contributions had ceased. As a result of the omitted pension contributions, Stevens did not accumulate credited service from 1961-66. Thus, the decision of Joint Council No. 84 to deny him a pension due to lack of credited service was dictated by the pre-1975 events. The relevant events all occurred before 1975.
 
 
 86
 Therefore, Stevens was not permitted to bring an ERISA claim and the district court was without jurisdiction to entertain the claim.
 
 B.
 Jurisdiction Under the LMRA
 
 87
 Defendants argue that the district court lacked subject matter jurisdiction under the LMRA because the LMRA does not confer jurisdiction upon federal district courts to entertain suits challenging benefit determinations made by pension plan administrators.
 
 
 88
 When this court reviews the grant of a motion to dismiss for lack of subject matter jurisdiction, it considers as true all the plaintiff's factual allegations. Rogers v. United States, 902 F.2d 1268, 1269 (7th Cir.1990).
 
 
 89
 Section 301 of the LMRA provides, in relevant part:
 
 
 90
 (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties....
 
 
 91
 ....
 
 
 92
 (c) For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members.
 
 
 93
 29 U.S.C. § 185. Because we hold that the district court lacked jurisdiction under ERISA, we must consider defendants' challenges to jurisdiction under the LMRA.[4] When it denied the defendants' motions, the district court held:
 
 
 94
 29 U.S.C. § 185(a) vests the District Court with jurisdiction over suits for violations of contracts between an employer and a union. Liberally construed and accepted as true, plaintiff's allegations involve the breach of a collective bargaining agreement; i.e., his employer's failure to make pension contributions on his behalf as required under such agreement. Thus, dismissal of plaintiff's claim under Rule 12(b)(6) for failure to allege a breach of a collective bargaining agreement is not appropriate.
 
 
 95
 We agree with the district court.
 
 
 96
 Defendants urge this court to adopt a three-part inquiry to analyze the jurisdictional issue, an inquiry used by two other circuits. In Carpenters Local No. 1846 v. Pratt-Farnsworth, Inc., 690 F.2d 489, 500 (5th Cir.1982), cert. denied, 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983), the Fifth Circuit held: "A section 301 claim must satisfy three requirements: (1) a claim of violation of (2) a contract (3) between an employer and a labor organization." See also Alvares v. Erickson, 514 F.2d 156, 161 (9th Cir.), cert. denied, 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 106 (1975). We accept defendants' suggestion, and conclude that the three-part inquiry is a useful framework with which to analyze LMRA jurisdiction.
 
 
 97
 The law of this circuit as to whether an employee may maintain an action against a union-administered pension fund is unclear. Central States cites Miller v. Davis, 507 F.2d 308 (6th Cir.1974), for the proposition that section 301 did not give the district court jurisdiction. In Miller, this court held:
 
 
 98
 Appellants asserted jurisdiction under 29 U.S.C. § 185(c). This provision merely describes where labor organizations may be sued and does not establish subject matter jurisdiction over claims of improper administration of union trust funds. Nor do Appellants cite a statute which makes federal law the test of Appellants' claims.
 
 
 99
 Id. at 311. This court later relied on Miller in Sellers v. O'Connell, 701 F.2d 575 (6th Cir.1983). Sellers affirmed a district court's finding that 29 U.S.C. § 185(c) did not confer jurisdiction over a suit challenging a pension fund rule which limited the retroactivity of benefits.
 
 
 100
 Subsequent to Miller and Sellers, however, the Supreme Court expanded the reach of section 301 in Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). The Court considered a suit brought by a union employee against his employer and the insurance company that administered a disability benefits plan. The disability plan was incorporated by reference in a collective bargaining agreement between the employee's union and the employer. The Court held:
 
 
 101
 If the policies that animate § 301 are to be given their proper range, however, the pre-emptive effect of § 301 must extend beyond suits alleging contract violations. These policies require that "the relationships created by [a collective bargaining] agreement" be defined by application of "an evolving federal common law grounded in national labor policy."
 
 
 102
 Id. at 210-11, 105 S.Ct. at 1910-11 (brackets in original) (quoting Bowen v. United States Postal Serv., 459 U.S. 212, 224-25, 103 S.Ct. 588, 595-96, 74 L.Ed.2d 402 (1983)).
 
 
 103
 Based on Allis-Chalmers, this circuit held that pension plans fall within the reach of section 301. In Apponi v. Sunshine Biscuits, Inc., 809 F.2d 1210 (6th Cir.), cert. denied, 484 U.S. 820, 108 S.Ct. 77, 98 L.Ed.2d 40 (1987), this court considered a suit by former employees of the defendant corporation. This court held that "[h]ere, plaintiffs' claims arise from [defendant employer's] purported obligations under the collectively-bargained pension plan. Therefore, the holding in Allis-Chalmers requires that plaintiffs' claims be treated as section 301 claims." Id. at 1216 (citations omitted). Although Apponi involved an employee suing her employer, unlike this case where the employee is suing pension plans, its holding is relevant to the three-part analysis of jurisdiction we have undertaken in this case.
 
 
 104
 An application of the three-part inquiry here reveals that the district court had jurisdiction under the LMRA. In reviewing a motion to dismiss for lack of subject matter jurisdiction, this court must accept Stevens' contentions as true. The first requirement is a claim of breach. Stevens alleges that Joint Council No. 84 breached the collectively-bargained pension plan because it failed to collect pension contributions from 1961-66, failed to notify Stevens that Beatty had stopped contributing, and made no effort to collect delinquent contributions. We find that Stevens has adequately alleged a breach.
 
 
 105
 The second requirement is that there be a contract. Apponi held that "[t]he term 'contracts,' as used in section 301, is not limited to collective bargaining agreements but includes other agreements between employers and labor organizations.... Collectively-bargained pension plans are 'contracts' for the purposes of section 301." Apponi, 809 F.2d at 1215 (citing Rehmar v. Smith, 555 F.2d 1362, 1367 (9th Cir.1976)). In this case, Stevens alleges that the two pension funds were created pursuant to collective bargaining agreements. Defendants assert that Stevens failed to produce any collective bargaining agreement. Stevens did, however, prove that this failure is the fault of the union itself, which apparently did not retain copies of expired collective bargaining agreements. The language of the pension trust agreements of both Joint Council No. 84 and Central States refers to a collective bargaining agreement. The trust agreement for the Joint Council No. 84 fund provided:
 
 
 106
 [T]he Employer and the Union have executed collective bargaining agreements which provide, among other things, for the establishment of a pension fund; and for contributions or payments to be made by the Employer to such fund for those of its employees who have qualified under the terms of the said collective bargaining agreements and any pension plan or plans established thereunder
 
 
 107
 ....
 
 
 108
 Central States' agreement has similar language. Apponi establishes that collectively bargained pensions plans are contracts. The district court properly inferred the existence of the collective bargaining agreements.
 
 
 109
 The third requirement is that the contract be between an employer and a labor organization. This is the closest inquiry, and Apponi did not address the situation where an employee is suing a pension fund. Nevertheless, the Ninth Circuit decision cited by Apponi, Rehmar v. Smith, 555 F.2d 1362, did address a situation much like Stevens'. In Rehmar, the plaintiff sought to avoid section 301 jurisdiction. The court held:
 
 
 110
 [Plaintiff's] first response is that § 301 is limited to suits between unions and employers and does not cover suits by beneficiaries of workers against the trustees of trust funds. This response is without merit. Section 301 jurisdiction is not dependent upon the parties to the suit but rather the nature or subject matter of the action. Jurisdiction exists as long as the suit is for violation of a contract between a union and employer even if neither party is a union or an employer. The pension benefit eligibility rules, which [plaintiff] alleges were violated, qualify as a contract between a labor organization and an employer.
 
 
 111
 555 F.2d at 1366 (emphasis added) (citations omitted). We agree with the Ninth Circuit's reasoning, and hold that the participant in a collectively-bargained pension plan may maintain an action against the plan trustees.
 
 
 112
 For the purposes of jurisdiction, this court considers as true the plaintiff's factual allegations. Given this presumption, Stevens' complaint adequately invokes jurisdiction under section 301 of the LMRA, 29 U.S.C. § 185(a).
 
 III.
 SUBSTANTIVE ISSUES
 A.
 
 113
 District Court's Review of Trustees' Decisions
 
 
 114
 Both defendants argue that the district court erred because it reviewed the determinations of the pension plan trustees de novo, and not under the arbitrary and capricious standard.
 
 
 115
 Courts have established that under the LMRA, the appropriate standard of review governing decisions of pension funds to deny benefits is limited to determining whether the trustees' actions were arbitrary and capricious. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109-110, 109 S.Ct. 948, 953-54, 103 L.Ed.2d 80 (1989); Varhola v. Doe, 820 F.2d 809, 813 (6th Cir.1987).
 
 In this case, the district court held:
 
 116
 An analysis of the evidence in this case convinces the Court that the Plaintiff has prevailed by the required preponderance of the evidence....
 
 
 117
 ....
 
 
 118
 ... Where a plaintiff has by a preponderance of the evidence proved an entitlement to a pension by complying with the requirements therefor, such pension should be issued retroactively to the date of application.
 
 
 119
 742 F.Supp. 964, 965-966. (Emphasis added.) Defendants focus on the emphasized language and contend that it demonstrates that the district court employed the wrong standard of review. Stevens concedes that the district court did not use the phrase "arbitrary and capricious" in its opinion, but argues that its failure to do so was irrelevant because the parties had previously agreed that arbitrary and capricious was the proper standard.
 
 
 120
 We agree with the defendants. It is a court's duty, when reviewing a prior determination, to plainly identify the appropriate standard of review and then to clearly employ that standard when reviewing the prior decision. In this case, the district court used language strongly suggesting that it employed a "de novo" rather than an "arbitrary and capricious" standard of review. The district court stated that it found, "by a preponderance of the evidence," that Stevens was due a pension. Preponderance of the evidence is a standard by which a factfinder weighs proof--it has no place in a court's review of a pension plan's benefits decision.
 
 
 121
 Given that the district court never adverted to the appropriate standard and used language suggesting it employed an inappropriate standard, we must vacate the court's judgment and remand for further proceedings. We do not, however, hold that the district court must conduct a new trial. Rather, we direct the district court to enter new findings of fact and conclusions of law as to whether the decisions of the defendants were arbitrary and capricious.
 
 
 122
 Because we reverse and remand on this issue, we need not consider many of the defendants' remaining issues. These include contentions that the district court: 1) clearly erred when it found that Stevens was covered at all times by the collective bargaining agreement; 2) clearly erred when it held the defendants should pay Stevens in one check; 3) failed to specify the number of years of credit for which each defendant is liable; 4) failed to enter a judgment that informed the losing parties of the remedy against them; and 5) clearly erred when it ordered Central States to pay interest. We leave these factual issues for district court determination under the proper standard of review.
 
 
 123
 Nevertheless, two of the remaining issues involve assertions by the defendants that the district court committed errors of law. We now turn to these claims.
 
 B.
 Venue
 
 124
 Before the district court, both defendants contended, for different reasons, that venue was not proper in the Southern District of Ohio. The relevant portion of section 301 provides:
 
 
 125
 (c) For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members.
 
 
 126
 29 U.S.C. § 185(c). Appellate courts have construed this section to provide not only jurisdiction but also venue for district courts: "We hold that section 301(a) does provide for venue for actions under the LMRA. Section 301(c) of the Act delineates the circumstances under which the district court has jurisdiction over a labor organization." White Motor Corp. v. International Union, 491 F.2d 189, 191 (2d Cir.1974) (footnote omitted).
 
 
 127
 Central States initially argues that it is not a labor organization and therefore that venue did not lie in the district court below. This argument confuses venue with jurisdiction. Our analysis of the LMRA jurisdiction issue demonstrates that under section 301, federal courts have jurisdiction over pension funds. Therefore, Central States, a pension fund, is a labor organization for the purposes of venue.
 
 
 128
 Central States also argues that it does not have offices in the Southern District of Ohio. This ignores the second part of 29 U.S.C. § 185(c), which grants venue in districts where officers are representing the organization. Under examination by the district court, a representative for Central States admitted that employees of Central States travel to the Southern District of Ohio "[e]ither visiting local unions or employers or they could also possibly be out here doing an audit." Central States' venue argument thus fails.
 
 
 129
 Joint Council No. 84 also appeals the venue issue. Unlike Central States, however, it did not move the district court to dismiss based on venue grounds. Rather, it moved only for a change of venue, and did so one month prior to trial. The district court ruled that this motion was not timely and that granting it would be unfair to Stevens. Joint Council No. 84 does not argue that the district court's conclusion is erroneous. Therefore, Joint Council No. 84's venue argument also fails.
 
 
 130
 We conclude that venue was proper in the Southern District of Ohio.
 
 C.
 Exhaustion of Administrative Remedies
 
 131
 Central States argues that Stevens failed to exhaust Central States' own appeal process before filing suit in the district court.
 
 
 132
 This circuit has not established a standard of review for a district court's decision whether a plaintiff has exhausted administrative appeals of a pension decision. The Seventh Circuit, however, has held that as to exhaustion, "its application is committed to the sound discretion of the court.... Where exhaustion is not specifically required by statute, the district court's discretionary decision may only be disturbed on appeal when there has been a clear abuse of discretion." Janowski v. International Bhd. of Teamsters, 673 F.2d 931, 935 (7th Cir.1982), vacated and remanded on other grounds, 463 U.S. 1222, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983). We adopt this position, and will review the district court's determination that a plaintiff has exhausted his administrative appeals of an adverse pension decision under the abuse of discretion standard.
 
 
 133
 The doctrine of exhaustion is not absolute in cases involving challenges to pensions. Id. Courts have held that "despite the usual applicability of the exhaustion requirement, 'there are occasions when a court is obliged to exercise its discretion ... the most familiar examples perhaps being when resort to the administrative route is futile....' " Amato v. Bernard, 618 F.2d 559, 568 (9th Cir.1980) (quoting Winterberger v. General Teamsters Local 162, 558 F.2d 923, 925 (9th Cir.1977)).
 
 
 134
 Stevens argues that further appeal to Central States would be futile because the basis for Central States' denial was that Joint Council No. 84 did not grant Stevens credit for the time period between 1961-66. Central States' representative admitted that if Joint Council No. 84 granted Stevens credit for the period 1961-66 and recognized pension liability, then Stevens would be entitled to a partial pension from Central States.
 
 
 135
 We conclude that the district court did not abuse its discretion when it did not require Stevens to pursue further appeals to Central States.IV.
 
 
 136
 We hold that the district court's dismissal of plaintiff's ERISA claim for lack of jurisdiction is AFFIRMED. We also hold that the district court's denial of defendants' motion to dismiss plaintiff's LMRA claim is AFFIRMED. We AFFIRM the district court's holdings that venue for the LMRA claim was proper in the Southern District of Ohio and that the plaintiff has exhausted her administrative appeals.
 
 
 137
 We REVERSE the district court's findings of fact and conclusions of law because the court employed an incorrect standard of review. We REMAND the case for reconsideration under the appropriate standard of review. We direct the district court to make new findings of fact and conclusions of law determining whether the defendants owe the plaintiff pension benefits. If the district court finds that the defendants owe Stevens a pension, then the court is further directed to determine the amount of credited service Stevens earned and the amount of pension each defendant owes.
 
 
 
 *
 The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 When customarily employed, the codes indicated whether an employee was new, laid off, suffered an illness or injury, had terminated, or had been terminated
 
 
 [2]
 We note that the Court is not unaware of the division of authority on this issue. See MEBA Pension Trust v. Rodriguez, 493 U.S. 872, 110 S.Ct. 202, 107 L.Ed.2d 155 (1989) (White, J., dissenting from denial of certiorari)
 
 
 [3]
 The parties were unable to obtain a copy of the collective bargaining agreement in force during the term of Stevens' employment with Beatty. The parties, however, do not dispute that agreements existed and that they required Beatty to make contributions to Joint Council No. 84
 
 
 [4]
 If this court had decided that the district court possessed jurisdiction under ERISA, then we would not consider whether jurisdiction also lies under the LMRA. Courts have treated ERISA as generally supplanting § 301 of the LMRA in appropriate pension cases. See Reiherzer v. Shannon, 581 F.2d 1266, 1271 (7th Cir.1978)