Charlene ALLEN, et al., Plaintiffs,

v.

UNIONMUTUAL STOCK LIFE INSURANCE CO. OF AMERICA, et al., Defendants.

No. 95–CV–320.

United States District Court, S.D. Ohio, Eastern Division.

Dec. 30, 1997.

Charles M. Murray, Patrick G. Warrer, Murray & Murray, Sandusky, OH, for Plaintiffs.

John T. Sunderland, Thompson Hine & Flory LLP, Columbus, OH, for Defendants.

## OPINION AND ORDER

MARBLEY, District Judge.

### FACTUAL BACKGROUND

This case comes before the Court on the defendant's motion for summary judgment. Plaintiff, Charlene Allen, a former employee of Cardinal Industries Incorporated ("Cardinal"), brings this action to recover disability benefits from the defendant pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*

Plaintiff was an employee of Cardinal from January 1, 1987 until January 22, 1988, and as an employee of Cardinal, she was covered by a long term disability plan (the "Plan") issued by the Defendant, Unionmutual Stock Life Insurance Company of America ("UNUM"). The Plan is an employee welfare benefit plan governed by ERISA. The Plan limits benefits for disability due to mental illness to 24 monthly payments while physical disability payments continue for the life of a beneficiary up to the age of sixty-five (65).

Plaintiff began having both physical and mental problems in September of 1987. In early 1988, Plaintiff was diagnosed with a mental disability and applied for benefits. UNUM paid Plaintiff benefits for 24 months for her mental illness and the benefits terminated on April 26, 1990. During this time, Plaintiff continued to seek medical advice and treatment. On April 11, 1989, Plaintiff was admitted to Richland Hospital. In his April 12, 1989 notes, Dr. Kenneth E. Covey, the psychologist who evaluated Plaintiff at Richland Hospital, indicated that Plaintiff was previously diagnosed as having multiple sclerosis ("MS"). Covey's notes state "[Plaintiff] was eventually told that she had multiple sclerosis and had to get used to that diagnosis. She informed her family and friends and her child that she had the disease, only to be told later that the physician was not sure that she had the disease." (Pl.'s Mem. in Opp'n at App. 1). In an April 17, 1990 letter terminating her benefits, UNUM informed Plaintiff of the appeal pro-

cedure. The letter stated that if Plaintiff disagreed with the termination of her benefits, she could appeal the decision to the UNUM Quality Review Section within sixty days of receipt of the notice. She did not appeal UNUM's termination of benefits.

Plaintiff continued to seek medical advice over the next four years and in May, 1994, Dr. Ted Barber diagnosed Plaintiff as having MS. She claims that MS was the cause of her medical problems beginning in September of 1987. Plaintiff informed UNUM of the revised diagnosis on July 21, 1994 and requested that her benefits be restored. On September 19, 1994, UNUM rejected Plaintiff's claim for benefits on two grounds: (1) her appeal of the denial determination made in April, 1990, was not timely; and (2) her request for reinstatement was not accompanied by any medical documentation. On January 18, 1995, Plaintiff's attorney requested that UNUM reconsider its decision and he provided medical documentation of her illness. On March 22, 1995, UNUM upheld its earlier rejection and found the medical documentation did not demonstrate that Plaintiff had MS. On March 23, 1995, Plaintiff filed this suit.

### LEGAL ANALYSIS

### I. Standard For Summary Judgment

UNUM moves for summary judgment on two grounds: (1) Plaintiff made no effort to exhaust her administrative remedies as required by law and, therefore, her case should be dismissed; and (2) the three year contractual limitation period had already run and, therefore, Allen is time-barred from bringing her claim.

Fed.R.Civ.P. 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its

case. *Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.,* 12 F.3d 1382, 1389 (6th Cir. 1993). The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.,* 8 F.3d 335, 339–40 (6th Cir.1993). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir.1993) (quoting *Anderson,* 477 U.S. at 251–53, 106 S.Ct. at 2511–13). In evaluating such a motion, the evidence must be viewed in the light most favorable to the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson,* 477 U.S. at 251, 106 S.Ct. at 2511–12; *Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir.1995).

### II. Exhaustion of Administrative Remedies

Although ERISA does not specifically require exhaustion, the Sixth Circuit has found that the administrative scheme of ERISA requires a participant to exhaust her administrative remedies before seeking legal recourse in federal court. *Weiner v. Klais and Co., Inc.,* 108 F.3d 86, 90–91 (6th Cir. 1997); *Baxter v. C.A. Muer Corp.,* 941 F.2d 451, 453 (6th Cir.1991); *Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979, 986 (6th Cir.1991); *Fallick v. Nationwide Mut. Ins. Co.,* 957 F.Supp. 1442, 1444 (S.D.Ohio 1997). Two exceptions exist, however, to this general rule. A claimant does not have to exhaust her administrative remedies when: (1) an

appeal would be futile; or (2) any possible administrative remedy would be inadequate. *Costantino v. TRW, Inc.,* 13 F.3d 969, 974–75 (6th Cir.1994); *Stevens v. Employer–Teamsters Joint Council No. 84 Pension Fund,* 979 F.2d 444, 459 (6th Cir.1992); *Baxter,* 941 F.2d at 453. Based upon these two exceptions, "the decision whether to apply the exhaustion requirement is committed to the district court's sound discretion and can be overturned on appeal only if the district court clearly abused its discretion." *Baxter,* 941 F.2d at 453 (quoting *Springer v. Wal–Mart Associates' Group Health Plan,* 908 F.2d 897, 899 (11th Cir.1990)).

■ Plaintiff does not dispute that she failed to exhaust her administrative remedies in 1990. Instead, Plaintiff contends that it would have been futile for her to pursue her administrative remedies in 1990 and that she was denied meaningful access to administrative remedies in 1994. In order to establish that resort to administrative remedies would be futile, a "clear and positive showing of futility" is required. *Hickey v. Digital Equipment Corp.,* 43 F.3d 941, 945 (4th Cir. 1995); *Kennedy v. Empire Blue Cross and Blue Shield,* 989 F.2d 588, 594 (2nd Cir. 1993); *Makar v. Health Care Corp. (Carefirst),* 872 F.2d 80, 83 (4th Cir.1989); *Fallick v. Nationwide Mut. Ins. Co.,* 957 F.Supp. 1442, 1456 (S.D.Ohio 1997). Some courts require the claimant to show to a certainty that the claim will be denied on appeal; the fact that the claimant doubts that the appeal will result in a different decision is insufficient. *Lindemann v. Mobil Oil Corp.,* 79 F.3d 647, 650 (7th Cir.1996); *Diaz v. United Agric. Employee Welfare Benefit Plan and Trust,* 50 F.3d 1478, 1485 (9th Cir.1995); *Communications Workers v. AT & T,* 40 F.3d 426, 432 (D.C.Cir.1994).

It is undisputed that Plaintiff did not pursue administrative remedies within 60 days of the termination of her benefits as required by the Plan. Plaintiff's factual assertions regarding the administrative appeal available in 1990 do not amount to a "clear and posi-

tive showing of futility," nor has Plaintiff established to a certainty that her claim would have been denied on appeal. Under the benefit Plan at issue in this case, it is clear that Plaintiff would not be entitled to additional benefits for mental illness.

It is not certain, however, that an appeal would have been denied had Plaintiff presented the evidence that she in fact had previously been diagnosed as having MS and continued to seek medical evaluation for a possible physical disability, which she apparently did, and which ultimately led to the rediagnosis of MS. The record establishes that Plaintiff was diagnosed prior to April 12, 1989, as having MS and that she informed her family, friends, and child that she had the disease. (Pl.'s Mem. in Opp'n at App. 1).[1] Plaintiff failed to relay, however, any of this information to the UNUM appeals board. Therefore, Plaintiff has not demonstrated that it would have been futile to appeal the termination of her benefits.

Hence, this Court holds that Plaintiff failed to exhaust her administrative remedies and does not fit under the futility exception. Therefore, Plaintiff is barred from seeking legal recourse in this Court.

### III. Contractual Limitations Period

■ Assuming *arguendo* that Plaintiff somehow can clear the exhaustion hurdle, her claim is nonetheless time-barred. An ERISA cause of action for benefits accrues, and the statute of limitations or contractual limitations period begins to run, when a benefit claim has been made and formally denied. *Stevens v. Employer–Teamsters Joint Council No. 84 Pension Fund,* 979 F.2d 444, 451 (6th Cir.1992). This is true even when the policy suggests otherwise. *de Coninck v. Provident Life & Accident Ins. Co.,* 747 F.Supp. 627, 633 (D.Kan.1990) (holding ERISA's accrual date for limitations period controlled despite contrary language in policy). The limitations period began to run on April 26, 1990.

---

1. Plaintiff contends that she was denied meaningful access to administrative remedies in 1994 when she confirmed that she had MS and wrote to UNUM about her findings. Plaintiff's focus on

1994 is irrelevant. If she intended her letter to be a request for an administrative appeal, it was submitted well beyond the Plan's time period for review.

## A. Validity of Contractual Limitations Period

■ The Plan contains an enforceable three year limitations period. ERISA does not provide a statute of limitations in the Act itself. Thus, courts often borrow analogous statutes of limitations from state law. Courts have found, however, that reasonable contractual limitations of a party's right to bring suit are enforceable and supersede the statute of limitations under state law. *Thomas v. Allstate Ins. Co.*, 974 F.2d 706, 709–10 (6th Cir.1992) (applying Ohio law) (holding that one year limitations period in insurance policy was reasonable and, therefore, enforceable to shorten the fifteen year statute of limitations for breach of contract); *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 874–75 (7th Cir.1997) (holding that insurance plan's thirty-nine (39) month contractual limitations period, shorter than statute of limitations, was reasonable and, thus, enforceable); *Bomis v. Metropolitan Life Ins. Co.*, 970 F.Supp. 584, 588–89 (E.D.Mich. 1997); *Chilcote v. Blue Cross & Blue Shield United*, 841 F.Supp. 877, 879–80 (E.D.Wis. 1993). Hence, this Court holds that the three year limitations period is reasonable and enforceable. Plaintiffs suit in 1995 is outside the three year limitations period and, accordingly, her claim is time-barred.

## B. Tolling the Contractual Limitations Period

### 1. Discovery Rule

■ Plaintiff argues that a discovery rule should be applied to toll the contractual limitations period until she knew or should have known about her MS. First, federal courts have uniformly rejected such tolling arguments. *Chilcote*, 841 F.Supp. at 881 n. 4; *Christie v. K–Mart Corp. Employees Retirement Pension Plan*, 784 F.Supp. 796, 804 (D.Kan.1992). Plaintiff argues that the court in *Bologna v. NMU Pension Trust of NMU Pension & Welfare Plan*, 654 F.Supp. 637 (S.D.N.Y.1987), borrowed a New York stat-

ute of limitations even though the plan contained its own contractual limitations period. (Pl.'s Mem. In Opp'n at 13). The limitations period in *Bologna*, however, was not in the plan, but came from the trustees, who the court found to have overstepped their authority in enacting a limitations period without the consent of the claimant. *Id.* at 639–40.

Second, this Court has followed the contractual limitations period and has not borrowed the state statute of limitations. Since this Court has not borrowed Ohio's statute of limitations, it would make no sense to borrow any tolling provisions connected with that statute. *See Chilcote*, 841 F.Supp. at 881. This Court declines to engraft a state tolling provision onto a contractual limitations period.

Third, even if this Court were to look to state law, Ohio courts have yet to apply the discovery rule to contracts that provide a reasonable limitations period. Plaintiff relies on *Kraly v. Vannewkirk*, 69 Ohio St.3d 627, 635 N.E.2d 323 (1994), to argue that the state discovery rule should toll a contractual limitations period. The court found:

> A provision in a contract of insurance which purports to extinguish a claim for uninsured motorist coverage by establishing a limitations period which expires before or shortly after the accrual of a right of action for such coverage is per se unreasonable and violative of the public policy of the state of Ohio as embodied in R .C. 3937.18.

*Kraly*, 69 Ohio St.3d at 628, 635 N.E.2d at 324 (syllabus para. 4). The court's holding does not, however, expressly address the discovery ruled.[2] Further, the court's holding is limited to uninsured motorist claims and subsequent cases have not expanded *Kraly* beyond the uninsured motorist context. Therefore, this Court declines to extend *Kraly* to the ERISA benefits area.

Fourth, even if this Court were to apply the discovery rule to this case, Plaintiff knew or should have known by 1989 that she had

---

**2.** Under the Ohio Supreme Court's syllabus rule, the holding of the court is limited to matters expressed in the court's official syllabus. *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 753, 115 S.Ct. 1745, 1749, 131 L.Ed.2d 820 (1995);

*Belville Mining Co. v. United States*, 999 F.2d 989, 993 n. 2 (6th Cir.1993); *State ex rel. Donahey v. Edmondson*, 89 Ohio St. 93, 107–08, 105 N.E. 269, 273 (1913).

MS or at least that it was possible that she had MS. Hence, the discovery rule would not assist Plaintiff in extending the three year limitations period until 1995.

### 2. Mental Incapacity

■ Plaintiff also argues that her alleged mental disability should toll the contractual limitations period under O.R.C. § 2305.16. As set forth above, this Court has followed the contractual limitations period and will borrow neither the state statute of limitations nor its concomitant tolling provisions. *See Chilcote,* 841 F.Supp. at 881.

Moreover, even if this Court were to apply O.R.C. § 2305.16 to this case, the evidence does not show that Plaintiff was of unsound mind as required by the statute and case law. "Unsound mind" is defined by O.R.C. § 1.02(c) as "includ[ing] all forms of mental retardation or derangement." There is no evidence in the record indicating that the Plaintiff was or is "mentally retarded." Although "derangement" has not been defined in the O.R.C., the Ohio Supreme Court has equated it with "insanity." *Fisher v. Ohio University,* 63 Ohio St.3d 484, 488, 589 N.E.2d 13, 16 (1992). The evidence presented indicates that, while Plaintiff may have suffered from bipolar affective disorder, she was well-orientated, with an unimpaired memory and no gross evidence of psychotic determinants. (Pl.'s Mem. in Opp'n at App. 3). Therefore, O.R.C. § 2503.16 would not assist Plaintiff in extending the three year limitations period until 1995.[3]

### CONCLUSION

Plaintiff failed to exhaust her administrative remedies and is time-barred from bringing her action in this Court. Hence, Defendant's motion for summary judgment is **GRANTED** and this case is **DISMISSED.** The Clerk shall remove this case from active status.

**IT IS SO ORDERED.**

---

**3.** Plaintiff's argument that a new cause of action accrues each month she fails to receive benefits is also flawed. The only case she cites in support of this proposition, *Nikaido v. Centennial Life Ins.* *Co.,* 42 F.3d 557 (9th Cir.1994), is distinguishable and limited to its facts. That case dealt with an accrual provision unique to California law which is not present in this case.