**Marcia J. KUHN, personal representative of the estate of James Gerard Potapowicz, deceased, and Marcia J. Kuhn, individually, Plaintiff,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, a/k/a MetLife, an insurance company licensed to do business in the State of Michigan, Defendant.**

No. 5:98–CV–82.

United States District Court,
W.D. Michigan,
Southern Division.

June 29, 1999.

---

James E. Burnett, Burnett, Kastran & Klein, PC, Allegan, MI, for Marcia J. Kuhn, plaintiff.

Randolph D. Phifer, Patterson, Phifer & Phillips, PC, Detroit, MI, for Metropolitan Life Ins. Co., defendant.

## OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MILES, Senior District Judge.

Plaintiff Marcia J. Kuhn, acting both in her own behalf and as personal representative of the estate of her deceased son, filed this action against defendant Metropolitan Life Insurance Company, also known as MetLife, in Michigan's Kalamazoo County Circuit Court, seeking a de-claratory judgment that MetLife is required to pay her, rather than her former daughter-in-law, the proceeds of a life insurance policy in force at the time of her son's death. MetLife filed a timely notice of removal to this court based on the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* The matter is currently before the court on MetLife's motion for summary judgment (docket no. 9). Plaintiff has opposed the motion.

For the reasons to follow, the court grants MetLife's motion.

### FACTS

Plaintiff's son James Gerard Potapowicz and Dianne L. Dawes divorced in 1992.[1] The divorce judgment contained the following language:

#### STATUTORY INSURANCE PROVISION

IT IS FURTHER ORDERED AND ADJUDGED that any rights of either party in any policy or contract of life, endowment or annuity insurance of the other, as beneficiary, are hereby extinguished, unless specifically preserved by this Judgment.

James Potapowicz died intestate on May 4, 1997, approximately five years after his divorce from Dawes. At the time of his death James had not remarried.

At both the time of his divorce and the time of his death, James, through his employer Meijer, Inc., was a participant in the Meijer, Inc. Life and Accidental Death or Dismemberment Benefits Plan ("the Meijer plan" or "the plan"). At the time of James' death, the life insurance benefits under the Meijer plan were funded by an insurance policy issued by MetLife. As of May, 1997, these benefits totaled $90,000.[2]

---

1. Pursuant to the judgment, Dawes, who had used the name Potapowicz during the marriage, reverted to her maiden name.

2. In her complaint, plaintiff alleged that the amount of the death benefit was $100,000. Complaint for Declaratory Judgment at 2, ¶ 4. However, in its answer MetLife alleges that the amount was $90,000, Answer at 2–3, ¶ 4,

At the time of James' death, Dawes was the named beneficiary under the Meijer plan. Evidence presented to the court by MetLife, and not disputed by plaintiff, indicates that James had designated Dawes as the sole beneficiary in a writing signed on July 16, 1990 and deemed effective July 19, 1990. Despite his divorce from Dawes and the provisions of the divorce judgment, however, James had apparently not changed the beneficiary designation for the plan. Regarding the beneficiary designation, the plan provides as follows:

> The 'Beneficiary' is the person or persons you choose to receive any benefit payable because of your death.
>
> You make your choice in writing on a form approved by us. This form must be filed with the records for This Plan.
>
> You may change the Beneficiary at any time by filing a new form with the Employer. You do not need the consent of the Beneficiary to make a change. When the Employer receives a form changing the Beneficiary, the change will take effect as of the date you signed it. The change of Beneficiary will take effect even if you are not alive when it is received.
>
> A change of Beneficiary will not apply to any payment made by us prior to the date the form was received by the Employer.
>
> Your choice of a Beneficiary for a personal policy issued under RIGHT TO OBTAIN PERSONAL POLICY OF LIFE INSURANCE ON YOUR OWN LIFE will be effective for This Plan.

Exhibit A, at 19.

After James' death, Kuhn, acting as personal representative of her son's estate, asserted a claim for the death benefits payable under the MetLife policy. In doing so, Kuhn provided MetLife with copies of the First Amended Judgment of Divorce (dated May 12, 1992) dissolving James' marriage to Dawes, as well as a Qualified Domestic Relations Order ("QDRO") (dated April 13, 1992). The QDRO provided that Dawes was awarded 30 percent of James' benefits as of the date of entry. However, by its express terms the QDRO applied only to James' retirement benefits accrued under the "Meijer, Inc. Savings Plus Plan." The QDRO made no mention of life insurance benefits which, of course, were addressed in the judgment as quoted above.

Because MetLife's records indicated that Dawes was the last-named beneficiary for James' life insurance benefits, and because it had received an adverse claim on behalf of the estate and Kuhn, MetLife notified Dawes of her right to make a claim. Not surprisingly, Dawes did assert a claim. Relying on the July, 1990 beneficiary designation and on the terms of the plan, MetLife denied Kuhn's claim and paid the entire amount of the death benefit to Dawes.[3]

Kuhn filed this action in Kalamazoo County Circuit Court on May 1, 1998, requesting a judgment "declaring the rights and obligations of Plaintiff [sic] to [the] life insurance proceeds" and a determination "that said life insurance proceeds should be distributed to Marcia J. Kuhn exclusively." Complaint for Declaratory Judgment at 4. MetLife filed a notice of removal, on the basis that the action involved a claim for life insurance benefits under an employee welfare benefit plan governed by ERISA, which preempts Kuhn's state law

---

and plaintiff has not disputed this allegation in her response to MetLife's motion. Plaintiff's Response to Defendant's Motion for Summary Judgment. at 3.

**3.** Based on the evidence presented, it appears that MetLife first notified Kuhn of its denial by letter dated December 15, 1997. Subsequently, Kuhn requested that MetLife reverse its decision, a request which MetLife denied by letter dated April 30, 1998. In its letter declining to reverse its position, MetLife cited in support of its position, *inter alia, Metropolitan Life Ins. Co. v. Pressley,* 82 F.3d 126 (6th Cir.1996), *cert. denied,* 520 U.S. 1263, 117 S.Ct. 2431, 138 L.Ed.2d 193 (1997) and *Metropolitan Life Ins. Co. v. Marsh,* 119 F.3d 415 (6th Cir.1997).

claims and provides the sole basis of recovery. After the parties were permitted time to engage in discovery, and MetLife filed this timely motion for summary judgment.

## ANALYSIS

MetLife has alleged, and Kuhn has not disputed, that the Meijer plan is an employee benefit plan as defined by ERISA. The court therefore has subject matter jurisdiction over this controversy. *See Walbro Corp. v. Amerisure Co.*, 133 F.3d 961, 965–66 (6th Cir.1998); *Auto Owners Ins. Co. v. Thorn Apple Valley, Inc.*, 31 F.3d 371, 374 (6th Cir.1994), *cert. denied*, 513 U.S. 1184, 115 S.Ct. 1177, 130 L.Ed.2d 1129 (1995). Moreover, MetLife has contended, and Kuhn has conceded, that MetLife is acting in its capacity as claims fiduciary for the plan.

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In evaluating a motion for summary judgment, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment bears the burden of establishing the non-existence of any genuine issue of material fact and may satisfy this burden by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). While inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, "[w]hen the moving party has carried its

burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Only factual disputes which may have an effect on the outcome of a lawsuit under the applicable substantive law are "material." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

At the outset, the court notes that the plan provides that, as a fiduciary, MetLife "shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan." MetLife's Motion for Summary Judgment, Exhibit A, at 28. Given this language, MetLife is correct insofar as it has argued that judicial review of the MetLife's decision is subject to the "arbitrary and capricious standard." *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Perry v. Simplicity Eng'g*, 900 F.2d 963, 965 (6th Cir.1990). Under this deferential standard, the fiduciary's denial of benefits under the plan must be upheld so long as it was reasonable. *See e.g., Auto Club Ins. v. Health and Welfare Plans Inc.*, 961 F.2d 588, 593 (6th Cir.1992).

In this case neither party has specifically indicated whether or not this court's review should be limited to the record which MetLife had before it at the time of its decision, or whether the court's review should or may include matters not part of MetLife's claim file at the time of its decision. The Sixth Circuit has adopted the position that review should be based only on evidence that was presented to the fiduciary. *Perry*, 900 F.2d at 966–67. However, in this case, given the state of the record the court's review is effectively limited to the contents of MetLife's claim file in any event, because Kuhn has placed no other evidence before the court.[4] The

4.  In support of its motion, MetLife has submitted a copy of the Meijer plan's Summary Plan Description (Exhibit A), the policy issued

to fund the benefits payable under the plan (Exhibit B), MetLife's complete claims file (Exhibit C), and the Declaration of Lynn Box,

court's review of the plan and all other evidence of record indicates that MetLife's denial of benefits was clearly reasonable, and therefore must be upheld.

ERISA is a comprehensive statute enacted to "protect ... the interests of participants in employee benefit plans and their beneficiaries[.]" 29 U.S.C. § 1001(b). To secure uniformity in the administration of employee benefit plans, ERISA expressly provides that its terms "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan[.]" 29 U.S.C. § 1144(a). "This preemption provision is to be construed broadly; a law 'relates to' an ERISA plan 'if it has a connection with or reference to such plan....' " *McMillan v. Parrott,* 913 F.2d 310, 311 (6th Cir.1990) (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983)).

The Sixth Circuit has repeatedly ruled that "a designation of beneficiaries has a connection with or reference to an ERISA plan, preempting state law." *Metropolitan Life Ins. Co. v. Pressley,* 82 F.3d 126, 129 (6th Cir.1996), *cert. denied,* 520 U.S. 1263, 117 S.Ct. 2431, 138 L.Ed.2d 193; *see also Metropolitan Life Ins. Co. v. Marsh,* 119 F.3d 415, 421 (6th Cir.1997) ("Applying state law to determine the beneficiary under the terms of a state divorce decree would not only relate to a plan, but would interfere with the administration of a plan and violate its terms"); *McMillan,* 913 F.2d at 311 ("The designation of beneficiaries plainly relates to these ERISA plans,

and we see no reason to apply state law on this issue"). Both *Pressley* and *McMillan* involve circumstances virtually identical to that presented here, and both cases held that the deceased's former spouse, as a named beneficiary, was entitled to the disputed benefits notwithstanding the terms of a divorce decree which contained language extinguishing her rights in them. More recent unpublished decisions have adhered to this precedent. *See Hendon v. E.I. DuPont De Nemours and Co.,* No. 96–6233, 1998 WL 199824 at 6 (6th Cir. April 13, 1998) ("this court is bound by *McMillan* and its progeny. ERISA requires plan administrators to follow plan documents when determining beneficiaries"), *cert. denied,* 525 U.S. 1012, 119 S.Ct. 530, 142 L.Ed.2d 441 (1998); *Czarski v. Bonk,* No. 96–1444, 1997 WL 535773 at 3 (6th Cir. Aug.28, 1997) ("this resolution fulfills the intent of Congress that ERISA plans be uniform in their interpretation and simple in their application"). Therefore, because Dawes was listed as the beneficiary on her former husband's ERISA-covered life insurance policy, MetLife correctly determined that she is entitled to the death benefits.

Relying on state law, without a citation to federal authority, and without even acknowledging relevant circuit precedent, Kuhn argues that a genuine issue of fact remains because the Meijer plan also contains the following provision:

> If there is no Beneficiary at your death for any amount of benefits payable because of your death, that amount will be paid to your estate. However, we may

---

a Senior Approver in MetLife's Group Life Claims office in Utica, New York. Plaintiff Kuhn has submitted nothing beyond her written brief in response (Plaintiff's Response to Defendant's Motion for Summary Judgment, docket no. 11). Although at one point in her brief Kuhn argues that an issue of fact remains, *id.* at 6, and that MetLife knew of James' divorce before his death, *id.* at 7, she has submitted no evidence in her own behalf and has in fact requested that the court grant summary judgment in her favor. *Id.* at 8.

The court also notes that the copy of the complaint filed with MetLife's notice of re-

moval references four purported exhibits (described as "A" through "D"): (1) a copy of the divorce judgment, (2) a copy of the QDRO; (3) a copy of the death certificate of James' father indicating that he predeceased his son, and (4) a copy of James' death certificate. None of these exhibits "A" through "D" is in fact attached to the court's copy of the complaint. However, Kuhn has not asserted that these matters are not otherwise contained in the claim file materials submitted by MetLife.

instead pay all or part of that amount to one or more of the following persons who are related to you and who survive you:

1. spouse;
2. child;
3. parent;
4. brother and sister.

Exhibit A, at 20. Kuhn argues that because her son had no beneficiary pursuant to the terms of the divorce judgment, this plan provision creates an "ambiguity."

In construing plan language, the court's responsibility is

to ascertain and effectuate the underlying intent.... This task begins with reference to the plan language itself, but may also include consideration of reasonable inferences and presumptions under the circumstances.... Plan language will be found ambiguous only if it is subject to two reasonable interpretations.... In other words, if plan language, however unartfully worded and clumsily arranged, fairly admits of but one interpretation, it may not be said to be ambiguous or fatally unclear.

*Travelers Ins. Co. v. Auto–Owners Ins. Co.*, 971 F.Supp. 298, 300–01 (W.D.Mich. 1997) (citations omitted). Here, the plan language admits of but one interpretation: the named beneficiary is entitled to the benefits, provided she does not die before or with the participant. Exhibit A, at 19–20. The divorce judgment, which is preempted by ERISA, provides no basis for finding an ambiguity in the plan's terms.

Kuhn also continues to rely on the QDRO entered in the divorce, as though it affords her some basis for relief. Section 1144(b)(7) provides in pertinent part as follows:

Subsection (a) of this section shall not apply to qualified domestic relations orders (within the meaning of section 1056(d)(3)(B)(i) of this title)[.]

29 U.S.C. § 1144(b)(7). In *Marsh*, the Sixth Circuit held that 29 U.S.C.

§ 1144(b)(7) excepts QDROs from ERISA preemption with respect to welfare plans as well as pension plans. 119 F.3d at 421. Section 1056(d)(3)(B)(i) sets out the particulars needed to establish a QDRO exempt from ERISA:

(B) For purposes of this paragraph—

(i) the term 'qualified domestic relations order' means a domestic relations order—

(I) which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and

(II) with respect to which the requirements of subparagraphs (C) and (D) are met[.]

Subparagraphs (C) and (D) of § 1056(d)(3) provides as follows:

(C) A domestic relations order meets the requirements of this subparagraph only if such order clearly specifies—

(i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,

(ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,

(iii) the number of payments or period to which such order applies, and

(iv) each plan to which such order applies.

(D) A domestic relations order meets the requirements of this subparagraph only if such order—

(i) does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan,

(ii) does not require the plan to provide increased benefits (deter-

mined on the basis of actuarial value), and

> **(iii)** does not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order.

In *Marsh*, the divorce decree required the decedent's minor children to be named as beneficiaries of two-thirds of the proceeds of his MetLife ERISA policy. 119 F.3d at 417. Although the decree did not literally comply with the requirements of § 1056(d)(3)(B)(i), the panel held that because the decree "substantially complied" with the statute it was excepted from ERISA's preemption. The decision reversed an entry of summary judgment in favor of the decedent's widow, who was named as the sole beneficiary of the MetLife policy. 119 F.3d at 416.

This court harbors some doubt about the correctness of *Marsh* to the extent that it holds that § 1144(b)(7) excepts QDROs from ERISA preemption with respect to welfare plans. Section 1056(d)(3)(L) expressly states that "[t]his paragraph shall not apply to any plan to which paragraph (1) does not apply." Section 1056(d)(1), however, mentions only "pension plans."[5] Recognizing that § 1056 "relates solely to pension plans," the panel in *Marsh* nonetheless stated that

> we do not believe § 1144(b)(7)'s exception to preemption is limited to pension plans. [Section 1056(d)(3)(B)(i) ] merely provides the definitional requirements for QDROs and the required procedures.

In so holding, the panel agreed with the Tenth Circuit decision in *Carland v. Metropolitan Life Ins. Co.*, 935 F.2d 1114 (10th Cir.1991), which held that QDRO rules can apply to a welfare plan

> Because the reference in the preemption clause to section 1056(d)(3)(B)(i) does

not restrict application of the statutory preemption exception to pension benefit plans, however, we interpret the exception to apply to all qualifying domestic relation orders whether they involve a pension or welfare benefit plan. Taken together, sections 1144(b)(7) and 1056(d)(3)(B)(i) of the statute exempt divorce decrees meeting the statutory requirements from ERISA preemption. The general goals of ERISA are served by this interpretation of the preemption exception because a divorce decree meeting the requirements contained in section 1056(d) provides all the necessary information to determine the identity of a beneficiary without creating unreasonable administrative burdens for the plan administrator.

935 F.2d at 1119–1120. *Marsh* also expressed the panel's agreement with a Seventh Circuit case, *Metropolitan Life Ins. Co. v. Wheaton*, 42 F.3d 1080 (7th Cir. 1994), which held as follows:

> We conclude that the literal reading of ERISA as amended by the Retirement Equity Act, a reading that establishes an exception to preemption for qualified domestic relations orders pertaining to all ERISA plans, not just pension plans, makes more practical sense than a flexible reading that gives weight to the history of the provision and to the fact that the provisions that surround the definition of qualified domestic relations orders, including the anti-alienation provision, are limited to pension plans, though the definition is not. We shall go with the literal reading[.]

42 F.3d at 1084.

However, even if one assumes that *Marsh*, which this court must follow, was correctly decided, neither *Marsh* nor a "literal reading" of ERISA requires or even permits a conclusion that MetLife improperly determined that the death benefits were payable to Dawes as named beneficiary. As noted above, the QDRO

---

**5.** Section 1056(d)(1) provides in full that "[e]ach pension plan shall provide that bene-

fits provided under the plan may not be assigned or alienated."

on which Kuhn relies simply does not mention the plan in question, referring only to her son's "accrued retirement benefits under the Meijer, Inc. Savings Plus Plan" and not to life insurance benefits. Indeed, Kuhn points to no language in the QDRO which supports her position. Instead, Kuhn apparently relies only on the language of the divorce decree itself. However, unlike the divorce judgment in *Marsh*, the decree here does not require that anyone be named as a beneficiary of any life policy, in any amount; it merely extinguishes the rights of both spouses to each other's life insurance benefits.

As the Supreme Court recently noted in *Boggs v. Boggs*, 520 U.S. 833, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997), in creating the QDRO mechanism Congress was careful not only to define an "alternate payee" as "any spouse, former spouse, child or other dependent of a participant," but also to specify that only such persons qualify as "beneficiaries" under a plan. *Id.* at 1763 (citing § 1056(d)(3)(K) and (J)). ERISA defines a "beneficiary" as "a person designated by a participant or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." *Id.* at 1764; 29 U.S.C. § 1002(8). However, Kuhn, as a mother of a plan participant, is neither designated as a payee by her son's divorce judgment, nor has she even attempted to show that she was his "dependent" as required by § 1056(d)(3)(K). Therefore, because this case does not involve an applicable QDRO, *Pressley* and *McMillan* are directly on point, not *Marsh*, and the existence of a QDRO applicable to another plan not at issue does not impact upon Kuhn's claim.

Finally, the court notes that Kuhn makes a number of arguments which seemingly suggest that MetLife harbored some improper motives in making its determination. Specifically, Kuhn argues (1) that MetLife knew of her son's divorce "well in advance of his death"; (2) that

MetLife delayed the distribution of the death benefits for over one year after the death; and (3) that MetLife may be benefitting in some manner from this dispute. Plaintiff's Response, at 7. Regarding Kuhn's first argument, the court fails to grasp the legal significance of the assertion, even assuming it to be true. Kuhn has presented no evidence indicating that her son sought to change his beneficiary after his divorce. Regarding Kuhn's third argument, the court also fails to comprehend how MetLife has benefitted from this action, for not only has it paid the named beneficiary as it contracted to do, but it has undoubtedly also incurred legal expenses in defending its actions, which were supported by precedent at the time they were taken.

Kuhn's third argument—that MetLife somehow delayed the distribution of benefits—makes perhaps the least sense of all. In making this argument, Kuhn seemingly suggests that MetLife should have simply and quickly paid the first claim for benefits which it received, notwithstanding indications of another named beneficiary. However, whatever Kuhn believes MetLife *should* have done, the court is aware of no evidence that MetLife's actions in any way departed from the standard of care specified under ERISA, which requires a fiduciary to discharge its duties "solely in the interest of the participants and beneficiaries ... for the exclusive purpose of [ ] providing benefits to participants and their beneficiaries" and "in accordance with the documents and instruments governing the plan[.]" 29 U.S.C. § 1104(a).[6] Kuhn may well be disappointed that her son did not name her as his beneficiary, but her disappointment is insufficient to override her son's valid designation.

## CONCLUSION

Kuhn's complaint seeks a declaration that MetLife is required to distribute to her the proceeds of her son's ERISA life

---

**6.** Notably, ERISA provides plan administrators with an 18–month period in which to

determine whether payments are subject to a valid QDRO. *See* 29 U.S.C. § 1056(d)(3)(H).

insurance policy. However, because the plan documents establish Kuhn's former daughter-in-law as sole beneficiary, and for the other reasons stated above, the court concludes that Kuhn is not entitled to the proceeds. The court therefore grants MetLife's motion for summary judgment, and dismisses this matter with prejudice in its entirety.