**Antoinette SEAMAN, Plaintiff,**

**v.**

**Diann JOHNSON, et al., Defendants.**

**No. 01–71871.**

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 7, 2002.

---

Michael J. Kotarski, Flint, MI, for Antoinette Seaman.

Michael J. Gildner, Simen, Figura, Flint, MI, for Diann Johnson.

Randolph D. Phifer, Nicole C. Cooper-Clay, Phifer, Phillips, Detroit, MI, for Metropolitan Life Ins. Co.

*OPINION AND ORDER (1) DENYING PLAINTIFF ANTOINETTE SEA-MAN'S MOTION FOR SUMMARY JUDGMENT, AND (2) GRANTING DEFENDANT DIANN JOHNSON'S CROSS MOTION FOR SUMMARY JUDGMENT*

BORMAN, District Judge. ·

Before the Court are two motions, Plaintiff Antoinette Seaman's motion for summary judgment (Docket Entry # 16), and Defendant Diann Johnson's motion for summary judgment (Docket Entry # 22). The Court heard oral argument on December 18, 2001. Upon consideration of the motions, the submissions of the parties, and the applicable law, the Court will GRANT Defendant Diann Johnson's motion, and DENY Plaintiff Antoinette Seaman's motion.[1]

## I.  BACKGROUND

This case arises under the Employee Retirement Income Security Act ("ERISA") because it deals with an employer sponsored employee benefit plan. Plaintiff Antoinette Seaman is the ex-wife of the decedent, Carl Johnson, Sr. (hereinafter "Decedent"). Defendant Diann Johnson was Decedent's spouse at the time of his death. Decedent retired from employment at General Motors ("GM"), and was a participant in GM's group life insurance plan for its employees. Defendant Metropolitan Life Insurance Company (hereinafter "MetLife") administers the plan.[2]

Sometime before 1969, Decedent married Plaintiff. In the early 70s, two children were born to them: Carl Johnson, Jr. and Sonja Johnson. In 1976, the couple divorced in Michigan. Relevant portions of the divorce judgment read as follows.

*SUPPORT OF EACH MINOR CHILD*

IT IS FURTHER ORDERED AND ADJUDGED that the Plaintiff, Carl Johnson, shall pay to the Defendant, Antoinette Johnson, weekly in advance, ... for the support and maintenance of said minor children .... Such payments shall continue until said minor children each reach the age of eighteen (18)

---

1. This decision MOOTS Defendant Diann Johnson's motion for joinder and transfer of venue (Docket Entry # 8).

2. For ease of reference, this Order refers to Carl Johnson, Sr. as Decedent, to Antoinette Seaman as Plaintiff, to Diann Johnson as Defendant, and to Metropolitan Life Insurance Company as MetLife. The children will be referred to by name.

years or finish high school, whichever event shall occur the later, or until the further order of the Court. . . .

\* \* \* \* \* \*

IT IS FURTHER ORDERED AND ADJUDGED that *as further support for said minor children,* the Plaintiff shall forthwith irrevocably designate the said minor children, Sonja Johnson and Carol Johnson, Jr. as beneficiaries of any life insurance policies he may by virtue of his employment, have with Chevrolet V–8, and he shall contiue [sic] said minor children as beneficiaries of said insurance policies or any other group policies he may have in connection with his employment *until such time as his obligation to support minor children as hereinbefore provided shall have been terminated* or until the further order of this Court. . . .

*INSURANCE*

IT IS ORDERED AND ADJUDGED, that . . . the Defendant, Antoinette Johnson shall hereafter have no further interest as beneficiary or otherwise in or to the life insurance policies endowmwnt, [sic] or annuity contracts standing in the name of or insuring the life of the Plaintiff, Carl Johnson.

(Johnson Divorce Decree, Exh. E to Met-Life's Counter Complaint, at 3–5 (emphasis added).)

Decedent's children with Antoinette Johnson Seaman, Sonja Johnson and Carl Johnson, Jr., are now in their early thirties.

Sometime after 1976, Decedent married Defendant Diann Johnson. They had a child together in 1984, Ezra Johnson. Diann Johnson was Decedent's spouse at the time of his death. They resided in Ohio. Defendant and her son, Ezra Johnson, still reside in Ohio.

During his lifetime, Decedent was employed by GM in Michigan (from at least 1969 to 1999). Decedent apparently retired from GM in 1999. (*See* Exh. D to MetLife's Counter Complaint, at 1.) GM established a group employee benefit program that provides, *inter alia,* life insurance benefits for its employees ("the plan").[3] At the time of Decedent's death, the life insurance benefits payable under the plan totaled $47,500. The plan, administered by MetLife, is an ERISA plan within the definition of 29 U.S.C. § 1001 *et seq.*

As to beneficiaries, the plan provides, in relevant part:

* * * The Employe may change the Beneficiary at any time by filing written notice thereof on such a form with the Employer of the Insurance Company. Consent of the Beneficiary shall not be requisite to any change of Beneficiary. . . If, at the death of the Employe, there shall be more than one designated Beneficiary, then, unless the Employe shall have specified the respective interests of such Beneficiaries, the interests of such Beneficiaries shall be several and equal.

If any designated Beneficiary shall die before the Employe, the rights and interest of such Beneficiary shall thereupon automatically terminate. *If, at the death of the Employe, there be no designated Beneficiary as to all or any part of the Basic Life Insurance payable, then the amount of Basic Life Insurance payable for which there is no designated Beneficiary shall be payable to the estate of the Employe,* provided, however, that the Insurance Company may, in such case, at its option, pay such amount to any one of the following surviving relatives of the Employe: wife, husband, mother, father, child or chil-

---

3. The plan spells employee as "Employe."

dren; and payment to any one or more of such surviving relatives shall completely discharge the Insurance Company's liability with respect to the amount of insurance so paid. * * *

(Exh. A to MetLife's Counter Complaint, at Part VI, Section B, on page 6 (emphasis added).)

On May 10, 2000, Decedent died. At the time of his death, the last beneficiary designation form on file for him was a 1969 form, designating his then-wife Antoinette Johnson (Plaintiff, Antoinette Seaman) as beneficiary. Plaintiff made a claim to MetLife for the life insurance benefits. Defendant Diann Johnson also made a claim for the benefits. MetLife attempted to have the parties settle this dispute between themselves, but to no avail.

Plaintiff filed this lawsuit on May 16, 2001, naming MetLife and Defendant Diann Johnson as defendants. MetLife filed its answer on July 13, 2001, and also filed a counter-complaint (against Plaintiff), cross-complaint (against Defendant Diann Johnson), and third party complaint for interpleader, naming as third party defendants Sonja Johnson and Carl Johnson, Jr. (decedent's adult children, from his marriage to Plaintiff).

Before the Court are cross-motions for summary judgment.

## II. ANALYSIS

### A. Subject Matter Jurisdiction

■ At oral argument, the issue of whether this Court had subject matter jurisdiction was raised. The case cited for the proposition that this Court may not have federal question jurisdiction was *Stevens v. Employer–Teamsters Joint Council No. 84 Pension Fund,* 979 F.2d 444 (6th Cir.1992). In *Stevens,* a former employee brought an action against his employer's pension funds, to recover his pension benefits. One of the issues raised was whether ERISA was triggered, as the dis-

pute centered around nonpayment of employee contributions for the plaintiff from 1961 to 1966, prior to the enactment of ERISA. The Sixth Circuit analyzed the issue of whether ERISA applied, and held:

if the operative events on which a pension plan bases a benefit decision occurred before January 1, 1975, there is ... no ERISA jurisdiction. ERISA jurisdiction will not lie in cases where a pension plan denies the applicant's claim after January 1, 1975, but the plan administrators exercised no discretion in so denying because the ultimate benefit decision was completely dictated by the pre–1975 events.

979 F.2d at 452.

*Stevens* is distinguishable from the case at bar. First, it dealt with a pension benefit, not a life insurance benefit. Pension plans are usually administered on the basis of the plan administrators' discretion; life insurance benefit plans do not vest discretion with the administrators. Second, the benefit decision was not completely dictated by pre–1975 events; the divorce decree, which factored into MetLife's decision not to issue benefits to Plaintiff, is a post–1975, and therefore post-ERISA, event. Thus, *Stevens* does not control this case, and this Court may properly exercise subject matter jurisdiction, as federal question jurisdiction exists under ERISA.

### B. Summary Judgment Standard

The Court may properly grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Blankenship v. Parke Care Centers,* 123 F.3d 868, 871–72 (6th Cir.1997). The Court is directed to

view the evidence in the light most favorable to the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party initially has the burden to advise the Court of the basis for the summary judgment motion and of demonstrating that the record shows no material issue of fact exists. *See Celotex Corp. v. Catrett* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, "the mere existence of a scintilla of evidence" in support of the non-moving party is not sufficient; a genuine issue for trial is presented when there is sufficient "evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

## C. ERISA

The Supreme Court has recently reaffirmed the proposition that ERISA requires "that [ERISA] plans be administered, and benefits be paid, in accordance with plan documents." *Egelhoff v. Egelhoff*, 532 U.S. 141, 121 S.Ct. 1322, 1329, 149 L.Ed.2d 264 (2001); *see also* 29 U.S.C. § 1104(a)(1)(D). ERISA is a comprehensive federal law regulating employee benefits. If an insurance policy is part of an employee welfare benefit plan governed by ERISA, then federal law governs, and any state law relating to that policy is preempted. 29 U.S.C. § 1144(a) ("Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ...."); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56–57, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

In *Egelhoff*, the Supreme Court determined that a Washington statute, which provided that upon divorce, a spouse's designation of the other spouse as a beneficiary under an insurance policy was automatically revoked, fell under ERISA's broad pre-emptive reach. 121 S.Ct. at 1327. *Accord Metropolitan Life Ins. Co. v. Pressley*, 82 F.3d 126, 129 (6th Cir.1996). However, this principle is not new to the Sixth Circuit. As early as 1990, the Sixth Circuit decided *McMillan v. Parrott*, 913 F.2d 310, 311 (6th Cir.1990), which held that state laws affecting a designation of a beneficiary of an employee benefit plan were pre-empted by ERISA.

### 1. Qualified Domestic Relations Orders

In 1984, Congress amended ERISA to provide a "qualified domestic relations orders" (hereinafter "QDROs") exception to general rule of broad pre-emption. Title 29 U.S.C. § 1144(b)(7) provides: "Subsection (a) of this section shall not apply to qualified domestic relations orders (within the meaning of section 1056(d)(3)(B)(i) of this title) ...." The definition of a QDRO is found in ERISA at 29 U.S.C. § 1056(d)(3):

(B) For purposes of this paragraph—

(i) the term "qualified domestic relations order" means a domestic relations order—

(I) which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and

(II) with respect to which the requirements of subparagraphs (C) and (D) are met, and

(ii) the term "domestic relations order" means any judgment, decree, or order (including approval of a property settlement agreement) which—

(I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and

(II) is made pursuant to a State domestic relations law (including a community property law).

(C) A domestic relations order meets the requirements of this subparagraph only if such order clearly specifies—

(i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,

(ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,

(iii) the number of payments or period to which such order applies, and

(iv) each plan to which such order applies.

29 U.S.C. § 1056(d)(3). Post-amendment QDROs require strict adherence to the requirements of § 1056(d)(3). However, the question is what to do with state orders which pre-date the amendments.

In *Metropolitan Life Ins. Co. v. Marsh*, 119 F.3d 415 (6th Cir.1997), the decedent was insured by an ERISA benefit plan. He had previously been married and had two children, but that marriage ended. The divorce decree pre-dated the 1984 amendments regarding QDROs, and thus did not strictly conform to § 1056(d)(3)'s requirements. The Sixth Circuit held that, in those cases, the divorce decree would be considered a QDRO so long as it "substantially compl[ied]" with the requirements of 29 U.S.C. § 1056(d)(3).[4] *Marsh*, 119 F.3d at 422. Under the facts before it, the court found that because the divorce decree provided for a two-thirds distribution of the benefits to the children, contained enough information so that the relevant plan could be identified, and no essential information was lacking, it would be given the effect of a QDRO, and the court would "not demand literal compliance where Congress' intent has been to give effect to domestic relations orders where it is clear what the decree intended." *Id.* at 422.

■ The divorce decree at issue in the instant case substantially complies with the requirements of § 1056(d)(3). It names the children as alternate payees, and lists the addresses of the children and the participant (Decedent). It specifies the plan with enough information so that the plan can be readily identified ("life insurance policies ... by virtue of his employment ... with Chevrolet V–8"). Although it does not specify the percentage of the benefits to be paid to each child, the plan itself provides for equal distribution if there is more than one beneficiary listed. And although it did not specify "the number of payments or periods for which such order applies," the court in *Marsh* found that factor irrelevant in a life insurance

---

**4.** The holding in *Marsh* has not been questioned by the Sixth Circuit. It was cited most recently in *Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 677–78 (6th Cir.2000). In *Howell*, the state court order at issue occurred in 1995 (post–1984 amendments). The court cited *Marsh* but concluded that the state court preliminary injunction, which was entered to maintain the financial status quo until divorce proceedings could be finalized, and included *none* of the information required under § 1056(d)(3) other than the names of the parties, "neither literally nor substantially complied with the requirements set forth in Section 1056." 227 F.3d at 678. The "nor substantially complied" holding was gratuitous and unnecessary, because the order did not pre-date the amendments. However, *Howell* attests to the continued viability of *Marsh*.

plan context, since the benefits would be paid in a lump sum at decedent's death. Like the *Marsh* order, the instant order does not lack any essential information. Therefore, under *Marsh*, because it substantially complies with the requirements, the 1976 divorce decree should be treated as a QDRO.

### 2. The Estate as Beneficiary

Title 29 U.S.C. § 1132(a) empowers certain classes of plaintiffs to bring suit under ERISA:

> (a) Persons empowered to bring a civil action
>
> A civil action may be brought—
>
> (1) by a participant or beneficiary—
>
> \*  \*  \*  \*  \*  \*
>
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . .

29 U.S.C. § 1132(a)(1)(B). ERISA defines beneficiary as:

> The term "beneficiary" means a person designated by a participant, *or by the terms of an employee benefit plan*, who

is or may become entitled to a benefit thereunder.

29 U.S.C. § 1002(8) (emphasis added). ERISA includes *estates* in the definition of persons under 29 U.S.C. § 1002(9). Therefore, ERISA provides that an estate can be a fiduciary, if the benefit plan at issue so provides.

In this case, as quoted above, the plan provides that the insurance benefits will be payable to the estate of the deceased if there is no designated beneficiary at the time of the decedent's death. (*See supra.*) By its terms, ERISA, via the plan language, permits the estate to be a beneficiary.[5]

### 3. Analysis

▆ While the instant case is closely analogous to *Marsh, supra,* a significant fact distinguishes this case from *Marsh.*[6] In *Marsh,* the divorce decree did not specify the insurance beneficiary designation as a child support mechanism for the children, and did not make the designation dependent on conditions (such as the age of the children, the requirement to pay child support, etc.). Thus, the Court in

---

**5.** Indeed, a number of federal court cases involve an estate as a party, and/or recipient of the benefits. *See Metropolitan Life Ins. Co. v. Barlow,* 884 F.Supp. 1118 (E.D.Mich.1995) (awarding benefits to decedent's daughter through his estate); *see also Metropolitan Life Ins. Co. v. Pressley,* 82 F.3d 126 (6th Cir. 1996); *Estate of Myra Fields v. Provident Life & Accident Ins. Co.,* 2001 WL 818353 (E.D.Pa.2001) (unpublished); *Retirement Committee of Rouge Steel Tax Efficient Savings Plan for Hourly Employees v. Cortese,* 2000 WL 1769521 (E.D.Mich.2000); *John Hancock Mutual Life Ins. Co. v. Claudia Timbo, Executrix of the Estate of John F. Smith,* 67 F.Supp.2d 413 (D.N.J.1999); *Mounce v. Mounce,* 921 F.Supp. 712 (N.D.Okla.1996); *Metropolitan Life Ins. Co. v. Walker,* 1995 WL 871150 (E.D.Mich.1995); *Estate of Antobelli v. IBM Int'l Business Machines Corp.,* 849 F.Supp. 1079 (D.Md.1994).

**6.** Plaintiff's reliance on *Pressley, supra,* is misplaced. In *Pressley,* the state court order at issue merely extinguished the spouse's entitlement to the insurance benefits, but did not provide for an alternative beneficiary. Because there was no designation of an alternate payee, the state order could not possibly have qualified as a QDRO. *See O'Neil v. O'Neil,* 136 F.Supp.2d 690, 693 (E.D.Mich. 2001) (holding non-inclusion of alternate payee is fatal omission); *Kuhn v. Metropolitan Life Ins. Co.,* 110 F. Supp.2d 589, 596 (W.D.Mich.1999).

In this case, however, it is undisputed that the 1976 divorce decree named Decedent's children with Antoinette Johnson Seaman, Sonja and Carl, Jr., as beneficiaries, and thus "alternate payees." This met the § 1056(d)(3) requirement, and therefore effected a "change of beneficiary" from Plaintiff, to her children.

*Marsh* concluded that the children were entitled to the benefits, as the last named beneficiaries of record.

However, in the instant case, there were conditions in the QDRO regarding the children's designation as beneficiaries. Decedent was to keep them as beneficiaries for as long as he had an obligation to provide child support. The provision specifically provided for the "irrevocabl[e]" designation of the children as beneficiaries to Decedent's life insurance policy; however, that clause is modified by the very next provision, providing that Decedent only had to continue the children as beneficiaries "until such time as his obligation to support minor children as hereinbefore provided shall have been terminated." In other words, the divorce decree operated to change the beneficiary; at his death, Decedent was no longer obligated to support the children.

As noted above, Sonja and Carl, Jr., are adults, and were adults long before their father's death. There is absolutely no allegation, and no evidence, that there was any child support obligation as to them at the time of Decedent's death. Thus, at the time of his death, the QDRO had expired by its terms.

Because the QDRO erased the 1969 beneficiary designation of Plaintiff, replaced her with Sonja and Carl, Jr., but then expired by its terms, there was, in effect, no beneficiary designated on Decedent's policy at the time of his death.

This Court is required, under *Egelhoff* and well-settled law, to look to the "plan documents" to determine to whom benefits are to be paid. The plan in this case provides that if, at the time of Decedent's death, there is no designated beneficiary, then the benefits are payable to the Estate. Based on the analysis above, since effectively there was no beneficiary designation at the time of Decedent's death, the insurance benefits should pass to the Estate.

### III. ORDER

For the reasons stated above, the Court DENIES Plaintiff Antoinette Seaman's motion for summary judgment, and GRANTS Defendant Diann Johnson's motion for summary judgment. The estate of the deceased is entitled to the ERISA plan benefits. Let judgment enter accordingly.

SO ORDERED.