**Antoinette SEAMAN, Plaintiff–Appellant,**

v.

**Diann JOHNSON, Defendant–Appellee,**

**Metropolitan Life Insurance Company, Defendant.**

**No. 02–1208.**

United States Court of Appeals, Sixth Circuit.

March 4, 2004.

---

Michael J. Kotarski, Flint, MI, for Plaintiff–Appellant.

Michael J. Gildner, Simen, Figura & Parker, Flint, MI, for Defendant–Appellee.

Before NORRIS, BATCHELDER, and ROGERS, Circuit Judges.

## OPINION

NORRIS, Circuit Judge.

This declaratory judgment action requires us to determine the proper beneficiary of a life insurance policy valued at $47,500. Because the policy formed part of an "employee benefit plan," we look to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"), in order to resolve the dispute. The owner of the policy, Carl Johnson, Sr., worked for General Motors and married plaintiff, Antoinette Seaman, sometime before 1969, when he designated her as the policy's beneficiary. Although the couple divorced in 1976, he never amended that designation. However, the divorce decree

substituted Mr. Johnson's two minor children as its beneficiaries until they reached the age of majority and divested plaintiff of any interest in its proceeds. Mr. Johnson subsequently married defendant, Diann Johnson.

Despite the preemption provisions of ERISA, the district court determined that the 1976 divorce decree effectively trumped the plan documents with respect to the designation of the proper beneficiary because it fell within the "qualified domestic relations order" exception of the statute, 29 U.S.C. § 1144(b)(7). The district court then concluded that the terms of the divorce decree required that the proceeds of the policy be paid to decedent's estate. *Seaman v. Johnson*, 184 F.Supp.2d 642 (E.D.Mich.2002).

For the reasons that follow, we affirm the district court.

## I.

Mr. Johnson spent his career working for General Motors before retiring in 1999. He died on May 10, 2000. On August 13, 1969, he executed a change of beneficiary form under the General Motors Group Insurance Plan naming his then-wife, Antoinette Johnson (now Seaman), as the beneficiary of his group life insurance policy. On June 6, 2000, plaintiff filed a statement of claim, noting that she was decedent's ex-wife and that there was a rival claim to the proceeds of the policy.

Plaintiff filed a declaratory judgment action on May 16, 2001, in order to resolve the dispute. The complaint names Diann Johnson, decedent's widow, and the Metropolitan Life Insurance Company ("MetLife"), the company that administered the group life insurance plan, as defendants. The parties agree that the life insurance plan qualifies as an employee welfare benefit plan as defined by ERISA, 29 U.S.C. § 1002(1).

MetLife filed a counter-complaint, cross-complaint, and third party complaint for interpleader. It noted that both Diann Johnson and Antoinette Seaman had filed claims for the proceeds of the policy. The company's complaint attached a copy of the divorce decree entered by a Michigan court in 1976 that provided as follows:

IT IS FURTHER ORDERED AND ADJUDGED that the Plaintiff, Carl Johnson, shall pay to the Defendant, Antoinette Johnson, weekly in advance, through the office of the Friend of the Court for Genesee County, Michigan, for the support and maintenance of said minor children, the following amounts:

During the time that there are two (2) minor children eligible for support the sum of $62.00 shall be paid;

During the time that there is one (1) minor child eligible for support the sum of $37.00 shall be paid.

. . . .

... [A]s further support for said minor children, the Plaintiff shall forthwith irrevocably designate the said minor children ... as beneficiaries of any life insurance policies he may by virtue of his employment, have with Chevrolet V–8. and he shall contiue [sic] said minor children as beneficiaries of said insurance policies or any other group policies he may have in connection with his employment until such time as his obligation to support minor children ... shall have been terminated....

... [T]he Defendant, Antoinette Johnson shall hereafter have no further interest as beneficiary or otherwise in or to the life insurance policies endowmwnt [sic], or annuity contracts standing in the name of or insuring the life of the Plaintiff, Carl Johnson.

The counter-complaint asked the district court to permit MetLife to tender $47,500

to the clerk of court pending the determination of the litigation. In a stipulation for discharge, injunction and dismissal, the parties agreed that MetLife should be dismissed from the case, having paid $51,293 to the court, which represents the proceeds of the policy, plus interest. MetLife is not a party to this appeal.

The district court entertained summary judgment motions submitted by the remaining parties. After noting that decedent's children had reached the age of majority, the district court looked to the provision of the plan document relating to beneficiaries:

> If any designated Beneficiary shall die before the Employe, the rights and interest of such Beneficiary shall thereupon automatically terminate. If, at the death of the Employe, there be no designated Beneficiary as to all or any part of the Basic Life Insurance payable, then the amount of Basic Life Insurance payable for which there is no designated Beneficiary shall be payable to the estate of the Employe, provided, however, that the Insurance Company may, in such a case, at its option, pay such amount to any one of the following surviving relatives of the Employee: wife, husband, mother, father, child or children. . . .

*Seaman,* 184 F.Supp.2d at 644.

ERISA plans must be administered according to the their plan documents. *Egelhoff v. Egelhoff,* 532 U.S. 141, 151 n. 4, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001) (citing 29 U.S.C. § 1104(a)(1)(D)). If an insurance policy is part of an employee welfare benefit plan, federal law preempts any state law related to the policy, 29 U.S.C. § 1144(a). However, ERISA contains an exception to the broad general rule governing preemption: the so-called "qualified domestic relations order." 29 U.S.C. § 1144(b)(7) ("QDRO"). The quali-

fied domestic relations order provision was enacted by Congress as part of the Retirement Equity Act of 1984, Pub.L. 98–397, 98 Stat. 1426, which also provides that an "alternate payee under a qualified domestic relations order" is to be considered an ERISA plan "beneficiary." 29 U.S.C. § 1056(d)(3)(J).

The district court looked to *Metropolitan Life Ins. Co. v. Marsh,* 119 F.3d 415 (6th Cir.1997), in reaching its conclusion that the divorce decree in this case represented a qualified domestic relations order as defined by ERISA. *Marsh* also involved a life insurance policy provided by General Motors that qualified as a welfare benefit plan under ERISA. This court held that qualified domestic relations orders that affect welfare plans, as well as pension plans, are not preempted by ERISA. *Id.* at 421. We went on to conclude that the divorce decree, which assigned two-thirds of the proceeds of the life insurance policy to the decedent's children, was a qualified domestic relations order because the divorce decree was specific enough to substantially comply with ERISA's requirements. *Id.* at 422.

After discussing *Marsh,* the district court below reasoned as follows:

> [I]n the instant case, there were conditions in the [qualified domestic relations order] regarding the children's designation as beneficiaries. Decedent was to keep them as beneficiaries for as long as he had an obligation to provide child support. The provision specifically provided for the "irrevocabl[e]" designation of the children as beneficiaries to Decedent's life insurance policy; however, that clause is modified by the very next provision, providing that Decedent only had to continue the children as beneficiaries "until such time as his obligation to support minor children as hereinbefore provided shall have been terminat-

ed." In other words, the divorce decree operated to change the beneficiary; at his death, Decedent was no longer obligated to support the children.

. . . .

Because the [qualified domestic relations order] erased the 1969 beneficiary designation of Plaintiff, replaced her with [the children], but then expired by its terms, there was, in effect, no beneficiary designated on Decedent's policy at the time of his death.

This Court is required, under *Egelhoff* and well-settled law, to look to the "plan documents" to determine to whom benefits are to be paid. The plan in this case provides that if, at the time of Decedent's death, there is no designated beneficiary, then the benefits are payable to the Estate. Based on the analysis above, since effectively there was no beneficiary designation at the time of Decedent's death, the insurance benefits should pass to the Estate.

*Seaman,* 184 F.Supp.2d at 649.

## II.

ERISA explicitly provides a civil cause of action to beneficiaries of qualified plans who seek to "recover benefits due to [them] under the term of [the] plan." 29 U.S.C. § 1132(a)(1)(B). As a preliminary matter, however, defendant argues the district court lacked subject matter jurisdiction because ERISA does not preempt state law when the cause of action arose, or any act or omission occurred, before January 1, 1975. 29 U.S.C. § 1144(b)(1). This court reviews a district court's determination of subject matter jurisdiction *de novo. Charter Township of Muskegon v. City of Muskegon,* 303 F.3d 755, 759 (6th Cir.2002) (citing *Green v. Ameritech,* 200 F.3d 967, 972 (6th Cir.2000)).

█ Because Mr. Johnson designated plaintiff as the plan beneficiary in 1969,

prior to the effective date of ERISA, defendant contends that ERISA is not controlling. *See Stevens v. Employer–Teamsters Joint Council No. 84 Pension Fund,* 979 F.2d 444, 452 (6th Cir.1992) (holding that "there is no ERISA preemption and, consequently, no ERISA jurisdiction" where the decision as to whether to award plan benefits is "dictated by . . . pre–1975 events"). When asked to apply the *Stevens* rationale below, the district court distinguished it factually by pointing out that in the case at hand "the benefit decision was not completely dictated by pre–1975 events; the divorce decree, which factored into MetLife's decision not to issue benefits to Plaintiff, is a post–1975, and therefore post-ERISA, event." *Seaman,* 184 F.Supp.2d at 645. This conclusion is entirely consistent with our recent decision in *Hansmann v. Fidelity Investments Institutional Servs. Co.,* 326 F.3d 760, 765 (6th Cir.2003), where we found the date of an annulment to be a "relevant act or omission" under *Stevens. Hansmann* at 763–65. Accordingly, the district court had subject matter jurisdiction pursuant to 29 U.S.C. § 1132(a).

Although not explicitly raised by either party, there is another jurisdictional concern that we feel obliged to address briefly. As already discussed, the general rule of ERISA preemption contains an exception for qualified domestic relations orders. 29 U.S.C. § 1144(b)(7). Where, as here, the proper distribution of assets contained in an employee benefit plan is at issue, ERISA controls and presumptively preempts state law. 29 U.S.C. § 1144(a). Moreover, where the proper distribution of assets is arguably controlled by a state-court domestic relations order, the threshold question is whether that order represents a QDRO as defined by 29 U.S.C. § 1056 of ERISA. That initial question is one for the federal courts. *See Rouse v.*

*DaimlerChrysler Corp. UAW Non–Contributory Plan,* 300 F.3d 711, 716 (6th Cir.2002).

■ When the district court determines, as it did here, that the domestic relations order under consideration meets the requirements of 29 U.S.C. § 1056, is it divested of jurisdiction? That would seem to be the implication of *Stevens:* "If a case is not governed by ERISA's preemption provision, then it makes no sense to grant federal courts jurisdiction to apply preexisting state law." *Stevens,* 979 F.2d at 450 (finding "the scope of ERISA jurisdiction is coterminous with the scope of ERISA preemption"). While the simplicity of such a rule holds a superficial appeal, we believe that the language of 29 U.S.C. § 1056 indicates that Congress did not intend such a result. Rather, § 1056(d)(3)(J) provides that "[a] person who is an alternate payee under a qualified domestic relations order shall be considered for purposes of any provision of this chapter a beneficiary under the plan." If Congress intended to terminate federal jurisdiction at the time that a domestic relations order was deemed a QDRO, it would presumably not have included a provision directing the plan administrator to make payments to a beneficiary who holds (or was divested of) such status based solely upon a QDRO. In short, we read § 1056(d)(3)(J) as essentially incorporating the QDRO into the ERISA plan for the purpose of determining the appropriate beneficiary. This conclusion is further supported by other provisions, such as §§ 1056(d)(3)(F) and (G), that direct a plan administrator to take note of a QDRO in determining benefits due under the plan. Finally, we are unable to locate a single case that stands for the proposition that federal subject matter jurisdiction terminates upon a determination that the existence of a QDRO controls the beneficiary of an ERISA plan. Ac-

cordingly, we conclude that the district court properly exercised its jurisdiction throughout these proceedings.

### III.

We now turn to the district court's grant of summary judgment, a decision we review *de novo. See Allen v. Michigan Dep't of Corr.,* 165 F.3d 405, 409 (6th Cir. 1999). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Plaintiff contends that Mr. Johnson named her as the beneficiary of the policy at issue and never executed a document altering that designation. She points to the language in ERISA that defines a qualified domestic relations order as something that "creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan[.]" 29 U.S.C. § 1056(d)(3)(B)(i)(I). Thus, she argues that defendant has no claim to the proceeds of the policy because she was not named an alternate payee by the divorce decree.

■ In our view, plaintiff's argument misses the point. The district court never held that defendant was entitled to the proceeds: to the contrary, it held that Mr. Johnson's estate was entitled to them. The district court addressed the requirements of § 1056(d)(3), including the requirement that a QDRO include an alternate payee, in these terms:

The divorce decree at issue in the instant case substantially complies with the requirements of § 1056(d)(3). It

names the children as alternate payees, and lists the addresses of the children and the participant (Decedent). It specifies the plan with enough information so that the plan can be readily identified ("life insurance policies ... by virtue of his employment ... with Chevrolet V–8"). Although it does not specify the percentage of the benefits to be paid to each child, the plan itself provides for equal distribution if there is more than one beneficiary listed. And although it did not specify "the number of payments or periods for which such order applies," the court in *Marsh* found that factor irrelevant in a life insurance plan context, since the benefits would be paid in a lump sum at decedent's death. Like the *Marsh* order, the instant order does not lack any essential information. Therefore, under *Marsh*, because it substantially complies with the requirements, the 1976 divorce decree should be treated as a QDRO.

*Seaman*, 184 F.Supp.2d at 647–48. Thus, the district court identified Mr. Johnson's children as "alternate payees" in the divorce decree, albeit for a limited period. As noted by the district court, the plan document provided, "If, at the death of the Employe, there be no designated Beneficiary as to all or any part of the Basic Life Insurance payable, then the amount of Basic Life Insurance payable for which there is no designated Beneficiary shall be payable to the estate of the Employe...." *Id.* at 644. ERISA defines "beneficiary" as a person designated by either a participant or by the terms of an employee benefit plan. 29 U.S.C. § 1002(8). The definition of "person," in turn, explicitly includes estates. 29 U.S.C. § 1002(9). Thus, the district court—correctly in our view—concluded that the QDRO determined the appropriate beneficiary. The QDRO explicitly states that plaintiff "shall hereafter have no further interest as beneficiary or other-

wise" in the plan policy. That language, when read in conjunction with the plan documents, resulted in the naming of Mr. Johnson's estate as the beneficiary of the plan.

IV.

The judgment of the district court is affirmed.